| | | |
|---|---|---|
| MCAFEE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-CV-160 |
| | § | |
| WILMER CUTLER PICKERING | § | |
| HALE AND DORR LLP, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT WILMER CUTLER PICKERING HALE AND DORR LLP'S
## MOTION TO DISMISS UNDER RULES 12(b)(1), (3), (6), (7), AND 9(b)
## AND REQUEST FOR ORAL HEARING

Of Counsel:

Shawn M. Bates
State Bar No. 24027287
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 732-8000
(713) 632-8002 (Fax)

Gerson A. Zweifach
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, D.C. 20005
202-434-5534
202-434-5029 (Fax)

R. Paul Yetter
State Bar No. 22154700
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 732-8000
(713) 632-8002 (Fax)

Attorney-in-Charge for Defendant Wilmer
Cutler Pickering Hale and Dorr LLP

June 9, 2008

Dockets.Justia.com

# Table of Contents

Table of Authorities ........................................................................................................... iii

Summary of Motion ............................................................................................................ 1

Preliminary Statement ........................................................................................................ 3

    A.    The 1996 Indemnity Agreement ............................................................... 3

    B.    McAfee Advances Fees For Goyal's Defense for Five Years ..................... 5

    C.    McAfee's Change of Heart in October 2007 ............................................. 5

    D.    McAfee Does an About-Face, at Least in Delaware ................................... 8

Argument and Authorities .................................................................................................. 10

I.    McAfee's Claims Are Not Ripe. ............................................................................ 10

    A.    Claims Are Not Ripe if They Are Contingent Upon Uncertain Future Events. .......... 11

    B.    McAfee's Claims Are Not Fit for Judicial Decision. ................................. 11

    C.    McAfee Will Suffer No Hardship if the Case Is Not Considered Now, but Both WilmerHale and Goyal Will Suffer Hardship if this Case Proceeds. .......................... 13

II.    McAfee Must Comply with the Forum Selection Clause. ......................................... 14

    A.    McAfee's Claims Fall Within the Forum Selection Clause. ........................ 14

    B.    WilmerHale Is Entitled To Enforce the Forum Selection Clause. ............... 16

III.    Goyal Is an Indispensable Party Who Cannot Be Joined. ......................................... 17

    A.    Goyal Is a Person Who Is Required To Be Joined if Feasible. ..................... 17

    B.    Because Goyal Cannot Be Joined and He Would Be Prejudiced if This Action Proceeded in His Absence, the Action Should Be Dismissed. ..................... 19

IV.    McAfee's Claims Violate Rule 9(b) and Otherwise Fail To State a Claim. .............. 21

    A.    McAfee's Fraud Claims Are Far Too Vague To Comply with Rule 9(b). ......... 21

    B.    McAfee's Other Claims Should Be Dismissed Under Rule 12(b)(6). .......... 23

        1.    McAfee's Subrogation Claims Must Be Dismissed. ......................... 24

a. McAfee's Subrogation Claim Fails Because It Has Not Alleged that a Final, Non-Contingent Payment Has Been Made. ...................... 24

b. McAfee's Subrogation Claims Purporting To Assert Goyal's Rights Against His Attorneys Should Be Dismissed. ........................... 26

2. McAfee's Claims of Negligence, Gross Negligence and Breach of Fiduciary Duty Must Be Dismissed. ................................................ 28

Conclusion and Prayer ......................................................................................................... 30

## Table of Authorities

## FEDERAL CASES

*A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*,
    559 F.2d 928 (4th Cir. 1977) ................................................................ 12

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967) .................................................................... 11, 13

*Aerus LLC v. Pro Team, Inc.*,
    2005 WL 1131093 (N.D. Tex. May 9, 2005) .......................................... 14

*Altava Health Mktg., Ltd. v. Shortgrass, Inc.*,
    2005 WL 2277598 (S.D. Tex. Sept. 15, 2005) ........................................ 18

*Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co.*,
    2005 WL 1862631 (W.D. Tex. July 8, 2005) .......................................... 16

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) ................................................................... 3

*Armstrong World Indus. v. Adams*,
    961 F.2d 405 (3d Cir. 1992) ................................................................... 3

*Assetworks, Inc. v. City of Cincinnati*,
    2003 WL 25463096 (W.D. Tex. Mar. 31, 2003) ...................................... 3

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................................ 23

*Britton v. Seale*,
    81 F.3d 602 (5th Cir. 1996) ................................................................. 27

*Brock v. Entre Computer Ctrs., Inc.*,
    740 F. Supp. 428 (E.D. Tex. 1990) ...................................................... 16

*Bry-Man's, Inc. v. Stute*,
    312 F.2d 585 (5th Cir. 1963) ............................................................... 20

*Clinton v. Janger*,
    583 F. Supp. 284 (N.D. Ill. 1984) ....................................................... 16

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ............................................................... 23

*Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves,*
    929 F.2d 103 (2d Cir. 1991) ............................................................................. 26

*Delcon Constr. Corp. v. HUD,*
    205 F.R.D. 145 (S.D.N.Y. 2002) ...................................................................... 18

*In re Enron Corp. Secs., Deriv. & ERISA Litig.,*
    2008 WL 744823 (S.D. Tex. Mar. 19, 2008) ................................................... 20

*Essex Ins. Co. v. Tyler,*
    309 F. Supp. 2d 1270 (D. Colo. 2004) ............................................................. 26

*Evergreen Int'l Aviation, Inc. v. Banc of America Secs., LLC,*
    2004 WL 1717627 (D. Or. July 29, 2004) ....................................................... 20

*First Nat'l Bank of Durant v. Trans Terra Corp. Int'l,*
    142 F.3d 802 (5th Cir. 1998) ........................................................................... 28

*Frith v. Guardian Life Ins. Co. of Am.,*
    9 F. Supp. 2d 734 (S.D. Tex. 1998) ................................................................. 22

*Fulbright & Jaworski, L.L.P. v. Mariner Health Care, Inc.,*
    2006 WL 4007923 (W.D. Tex. May 22, 2006) ................................................ 23

*GMAC Commercial Mortg. Corp. v. East Tex. Holdings, Inc.,*
    441 F. Supp. 2d 801 (E.D. Tex. 2006) ............................................................. 22

*Global Dis. Travel Servs., LLC v. TWA,*
    960 F. Supp. 701 (S.D.N.Y. 1997) .................................................................. 18

*Goldstein v. MCI WorldCom,*
    340 F.3d 238 (5th Cir. 2000) ........................................................................... 22

*HS Res., Inc. v. Wingate,*
    327 F.3d 432 (5th Cir. 2003) ........................................................................... 19

*Harrell & Sumner Contr. Co. v. Peabody Petersen Co.,*
    546 F.2d 1227 (5th Cir. 1977) ......................................................................... 20

*Hart v. Bayer Corp.,*
    199 F.3d 239 (5th Cir. 2000) ...................................................................... 21, 23

*Ingalls v. Edgewater Private Equity Fund III, L.P.,*
    2005 WL 2647962 (S.D. Tex. Oct. 17, 2005) .................................................. 29

*Jenkins v. Reneau,*
    697 F.2d 160 (6th Cir. 1983) ........................................................................ 20

*Lambert v. Kysar,*
    983 F.2d 1110 (1st Cir. 1993) ....................................................................... 15

*Nat'l Treas. Employees Union v. United States,*
    101 F.3d 1423 (D.C. Cir. 1996) ................................................................... 11

*Nextrade, Inc. v. Hyosung (Am.), Inc.,*
    2005 WL 348400 (9th Cir. Feb. 14, 2005) .................................................. 15

*Qualcomm Inc. v. Broadcom Corp.,*
    2007 WL 2900537 (S.D. Cal. Sept. 28, 2007) ............................................ 27

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ....................................................................... 11

*Sample v. Morrison,*
    406 F.3d 310 (5th Cir. 2005) ......................................................................... 3

*Schiavone Constr. Co. v. City of New York,*
    1995 WL 714339 (S.D.N.Y. Dec. 5, 1995) ................................................ 20

*Scott v. Pfizer, Inc.,*
    2008 WL 508641 (E.D. Tex. Feb. 21, 2008) .............................................. 21

*Sever v. Glickman,*
    298 F. Supp. 2d 267 (D. Conn. 2004) ......................................................... 18

*Stewart Org., Inc. v. Ricoh Corp.,*
    779 F.2d 643 (11th Cir. 1986) ..................................................................... 15

*Tex. Source Group, Inc. v. CCH, Inc.,*
    967 F. Supp. 234 (S.D. Tex. 1997) ............................................................. 16

*United States v. Carmichael,*
    343 F.3d 756 (5th Cir. 2003) .................................................................. 11, 12

*United States v. Williams,*
    2008 WL 783555 (E.D. Tex. Mar. 20, 2008) ............................................. 23

*United Transp. Union v. Foster,*
    205 F.3d 851 (5th Cir. 2000) ....................................................................... 11

*U.S. ex rel. Siemens Building Techs., Inc. v. Grot, Inc.,*
2005 WL 2012263 (E.D. Tex. Aug. 19, 2005) ............................................. 22

*Valley v. Rapides Parish Sch. Board,*
145 F.3d 329 (5th Cir. 1998) ...................................................................... 11

*Williams v. WMX Techs.,*
112 F.3d 175 (5th Cir. 1997) ...................................................................... 22

## STATE CASES

*Accelerated Christian Educ'n, Inc. v. Oracle Corp.,*
925 S.W.2d 66 (Tex. App. 1996) ................................................................. 16

*Am. Centennial Ins. Co. v. Canal Ins. Co.,*
843 S.W.2d 480 (Tex. 1992) ....................................................................... 26

*Am. Cont'l Ins. Co. v. Weber & Rose, P.S.C.,*
997 S.W.2d 12 (Ky. Ct. App. 1998) ............................................................ 26

*Am. Employers' Ins. Co. v. Med. Protective Co.,*
419 N.W.2d 447 (Mich. Ct. App. 1988) ..................................................... 26

*Barcelo v. Elliott,*
923 S.W.2d 575 (Tex. 1996) ....................................................................... 28

*Barnette v. United Research Co.,*
823 S.W.2d 368 (Tex. App. 1991) ............................................................... 15

*Cent. Nat'l Ins. Co. of Omaha v. Dixon,*
559 P.2d 1187 (Nev. 1977) .......................................................................... 25

*Charles v. Tamez,*
878 S.W.2d 201 (Tex. App. 1994) ............................................................... 27

*Deutsch v. Hoover, Bax & Slovacek, L.L.P.,*
97 S.W.3d 179 (Tex. App. 2002) ................................................................. 29

*Fasciana v. Elec. Data Sys.,*
829 A.2d 160 (Del. Ch. 2003) ..................................................................... 25

*Fleetwood v. Med. Ctr. Bank,*
786 S.W.2d 550 (Tex. App. 1990) ............................................................... 24

*Fortis Benefits v. Cantu,*
234 S.W.3d 642 (Tex. 2007) ....................................................................... 15

*Hiebert v. Millers' Mut. Ins. Ass'n of Ill.*,
  510 P.2d 1203 (Kan. 1973)............................................................................25

*Homestore, Inc. v. Tafeen*,
  888 A.2d 204 (Del. 2005)..............................................................................12

*Kimbell v. Penn Mut. Ins. Co.*,
  2007 WL 315339 (Del. Super. Ct. Jan. 31, 2007) ......................................24

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
  991 S.W.2d 787 (Tex. 1999) .........................................................................28

*Metro. Prop. & Cas. v. Harper*,
  7 P.3d 541 (Or. App. 2000) .....................................................................13, 25

*Musser v. Provencher*,
  48 P.3d 408 (Cal. 2002)............................................................................26, 27

*Nat'l Union Fire Ins. Co. v. Salter*,
  717 So.2d 141 (Fla. Dist. Ct. App. 1998)......................................................26

*Safeway Ins. Co. v. Collins*,
  963 P.2d 1085 (Ariz. Ct. App. 1998) .............................................................25

*Safeway Managing Gen. Agency, Inc. v. Clark & Gamble*,
  985 S.W.2d 166 (Tex. App. 1998) .................................................................29

*Scherrer v. Haynes & Boone, L.L.P.*,
  2002 WL 188825 (Tex. App. Feb. 7, 2002)...................................................29

*State Farm Mut. Auto. Ins. Co. v. Waibel*,
  2001 WL 252071 (Tex. App. 14, 2001) .........................................................24

*Swank v. Cunningham*,
  2008 WL 796982 (Tex. App. Mar. 27, 2008) ................................................29

*Thompson v. Vinson & Elkins*,
  859 S.W.2d 617 (Tex. App. 1993) .................................................................28

*United States Oil & Refining Co. v. Lee & Eastes Tank Lines, Inc.*,
  16 P.3d 1278 (Wash. Ct. App. 2001) .......................................................24, 25

*Vinson & Elkins v. Moran*,
  946 S.W.2d 381 (Tex. App. 1997) .................................................................27

*Zuniga v. Groce, Locke & Hebdon,*
    878 S.W.2d 313 (Tex. App. 1994) ............................................................................................27

Pursuant to Fed. R. Civ. P. 12(b)(1), (3), (6), (7), and 9(b), Defendant Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") moves to dismiss the Second Amended Complaint. WilmerHale requests an oral hearing on this Motion.[1]

## Summary of Motion

This lawsuit was brought at the wrong time and in the wrong forum, by a plaintiff who has no standing to sue the defendant, and who seeks to prejudice the interests of an absent party.

The case arises out of a 1996 Indemnity Agreement, in which plaintiff McAfee, a Delaware corporation, promised to advance the defense costs for claims against its CFO, Prabhat Goyal, pending an ultimate determination of Goyal's right to indemnification. McAfee agreed in the Indemnity Agreement that any disputes arising from it must be litigated in Delaware. Goyal was subsequently the subject of a five-year criminal investigation and prosecution, in which he was represented by defendant WilmerHale. Just last month, McAfee conceded in Delaware Chancery Court that the Indemnity Agreement requires it to continue to advance funds for Goyal's sentencing and appeal, and that any claim by McAfee to recover fees advanced for Goyal must be deferred until a recoupment proceeding in Delaware, after the criminal case is concluded.

Nevertheless, after paying WilmerHale invoices approved by Goyal from 2002 to 2007, McAfee launched this unprecedented attack on its indemnitee's lawyers while they are still representing him. Notwithstanding McAfee's admissions in Delaware Chancery Court that Goyal's ultimate entitlement to indemnification (and its right to recoupment) cannot be determined

---

[1]  On June 9, 2008, WilmerHale filed its Motion to Strike Second Amended Complaint, on the ground that plaintiff failed to seek leave to file that pleading under Rule 15(a). The arguments in the instant Motion, though directed at the unapproved Second Amended Complaint, apply with equal force to plaintiff's First Amended Complaint.

until after his appeal is heard, McAfee ignores basic principles of subrogation and asserts the right to "step into Goyal's shoes" and assert claims that could only belong to him. Notwithstanding McAfee's recent admission in Chancery Court that it must continue to meet its advancement obligations to Goyal and that challenges to the reasonableness of the fees advanced should be deferred until the criminal case is concluded, McAfee attacks the reasonableness of WilmerHale's fees in the middle of Goyal's sentencing and appeal. And notwithstanding McAfee's contractual commitment to litigate all matters arising out of the Indemnity Agreement in Delaware, where Goyal and McAfee are both before the Chancery Court, McAfee asks this Court to hear this case against Goyal's lawyers, in Goyal's absence.

What is before the Court now are two sets of allegations: claims that WilmerHale's fees were unreasonably high, which claims are unripe as between plaintiff and WilmerHale and may be pursued only in Delaware; and claims for fraud and theft, which are insufficient on their face.

Accordingly, defendant WilmerHale has brought this Motion, based on the following grounds:

- First, the Court lacks subject-matter jurisdiction over this matter because there is no justiciable, ripe dispute between these parties. McAfee's statements in Delaware confirm that, under Delaware law and the Indemnity Agreement, any dispute about the reasonableness of fees advanced should be deferred until after the criminal prosecution is completed, at which time Goyal may be obliged to return all of the fees advanced in a recoupment proceeding. Accordingly, the case should be dismissed under Rule 12(b)(1).

- Second, even if this matter were ripe, it could only be heard in the Chancery Court of Wilmington, Delaware, because McAfee has so agreed in the Indemnity Agreement. Accordingly, the case should be dismissed under Rules 12(b)(1) and (3).

- Third, McAfee's Complaint fails to join an indispensable party -- Goyal -- who cannot be joined here, but who is already a party with McAfee in

a pending dispute over the same matters in Delaware. Accordingly, the case should be dismissed under Rule 12(b)(7).

- Fourth, in addition to these deficiencies, the Complaint suffers from substantive defects.

    o The fraud and theft allegations do not approach the standard of Rule 9(b).

    o The non-fraud claims all depend upon McAfee's claimed status as a party subrogated to Goyal's rights vis-à-vis WilmerHale, but McAfee is not a subrogated party as a matter of law. As it admitted in Delaware, the fee payments it has made are only provisional payments. McAfee therefore cannot step into Goyal's shoes and assert claims that belong only to him. Moreover, McAfee is owed no duty by WilmerHale and cannot make claims of negligence, gross negligence, or breach of fiduciary duty. Accordingly, these claims must be dismissed under Rule 12(b)(6).

Because this Motion raises issues under Rules 12(b)(1) and (3), defendant has supplied the Court with contracts, pleadings and transcripts that confirm that this case should not proceed in this Court. [2]

## Preliminary Statement

### A.      The 1996 Indemnity Agreement

The Indemnity Agreement ("Agreement") (Exh. 1) drafted by McAfee is unambiguous in its purpose: "competent and experienced persons are increasingly reluctant to serve as . . . officers . . . of corporations unless they are protected by . . . indemnification," in part

---

[2]   A challenge to ripeness is governed by Rule 12(b)(1), because it is an "essential component" of federal subject matter jurisdiction. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). In deciding a motion challenging ripeness, the court may consider facts outside the complaint. *See Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 n.10 (3d Cir. 1992) (in considering motion to dismiss for lack of ripeness, the "district court 'may inquire, by affidavits or otherwise, into the facts as they exist.'" (quoting *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)). If subject matter jurisdiction is found to exist, WilmerHale moves this Court to enforce a forum-selection clause in the Indemnity Agreement pursuant to Rules 12(b)(1) and (3). That motion may rely on matters outside the four corners of the Complaint. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *Assetworks, Inc. v. City of Cincinnati*, 2003 WL 25463096, at *11 (W.D. Tex. Mar. 31, 2003). Defendant WilmerHale relies on the materials submitted herewith and any facts recited herein only for the purpose of its Motion under Rules 12(b)(1) and (3), and relies only on the content of the Complaint for its Motion under Rules 9(b) and 12(b)(6) and (7).

because the "costs of litigation may be so enormous . . . that the defense . . . of such litigation is often beyond the personal resources of . . . officers." Exh. 1, ¶¶ A, C. Because of the "unfair[ness]" of subjecting officers to the "huge . . . expenses" that may be incurred, McAfee's Board decided that the company must indemnify its officers to "retain and attract" the type of "talented and experienced" persons who are capable of taking "the business risks necessary for [McAfee's] success." *Id.* ¶¶ D, F. After expressly recognizing the indemnification provisions of Delaware law, McAfee announced that it agreed "to assume for itself maximum liability for expenses . . . in connection with claims against such . . . officers in connection with their services to the Company." *Id.* ¶¶ F, G.

The Agreement recognized that Goyal's ultimate entitlement to indemnification, which may depend upon his good faith and the merits of claims against him, might not be known until the end of protracted proceedings. *Id.* ¶ 4. Thus, in a section entitled "Mandatory Advancement of Expenses," McAfee committed to Goyal that it "*shall advance all expenses* . . . in connection with . . . any proceeding to which the Indemnitee is a party . . . by reason of the fact that the Indemnitee is or was an agent of the Company." *Id.* ¶ 6.[3] Goyal, in turn, was obliged to repay amounts that are "*determined ultimately*" not to be subject to indemnification. *Id.*

The Agreement is to be "enforced so as to provide indemnification to [Goyal] to the fullest extent permitted by law including those circumstances in which indemnification would otherwise be discretionary" and is "governed exclusively by" Delaware law. *Id.* ¶¶ 14, 18. And "any action instituted under this Agreement shall be brought only in the state courts of the State of Delaware," whose jurisdiction both parties "irrevocably consented to," for "all purposes in connection with any action . . . which arises out of or relates to this Agreement." *Id.* ¶ 19.

---

[3]     Unless otherwise indicated, all emphasis in quotations has been supplied by counsel.

-4-

**B. McAfee Advances Fees For Goyal's Defense for Five Years**

In 2002, the Department of Justice launched an investigation into McAfee's accounting practices. On the recommendation of McAfee's counsel, Goyal hired WilmerHale, and McAfee began advancing fees.[4] The accounting case was complex, and involved the production and review of 1.2 million documents. Exh. 2, at ¶ 24. Trial preparation costs increased when the court continued the trial shortly before the long-scheduled July 10, 2006 trial date, requiring WilmerHale to ramp up a second time toward the end of 2006. Exh. 2, at ¶ 24. Although other McAfee executives pleaded guilty, Goyal stood trial and was convicted. Second Amended Complaint ("2nd Am. Compl."), at ¶ 6.

As the Complaint alleges, Goyal's defense costs for the multiple civil and criminal proceedings in question have exceeded $12 million. *Id.*[5] Pursuant to a procedure established by McAfee, for five years WilmerHale presented monthly invoices to Goyal for approval and confirmation of reasonableness, and the invoices were then forwarded to McAfee. Exh. 2, at ¶¶ 22-23. Until October 2007, McAfee raised any questions it had about invoices, which questions were resolved with WilmerHale. *Id.* at ¶ 23.

**C. McAfee's Change of Heart in October 2007**

In the fall of 2007, with the criminal case entering the sentencing phase, McAfee stopped paying invoices. *Id.* at ¶¶ 2, 27. McAfee offered WilmerHale shifting explanations, from

---

[4]    Complaint, *Goyal v. McAfee*, Del. Chancery Court (attached as Exh. 2), at ¶¶ 1, 20.

[5]    According to public filings, other accounting prosecutions have also led to substantial indemnification expenses: Gregory Reyes, former CEO of Brocade ($46.7 million), *see United States v. Reyes,* 3:06-cr-556 (N.D. Cal. 2008) (Letter of John C. Dwyer, filed January 10, 2008); Sanjay Kumar, former CEO of Computer Associates ($14.9 million, without a trial), *see United States v. Stein,* No. 1:05-cr-888 (S.D.N.Y. 2005) (Opinion of July 16, 2007); John Boultbee, former CFO of Sun-Times Media ($14.3 million), *see Sun-Times Media Group, Inc. v. Black,* Case No. 3518 (Del. Ch. Ct. February 1, 2008) (Complaint).

new billing guidelines to new payment software to review by another attorney. *Id.* at ¶¶ 27-31. On April 9, 2008, representatives of McAfee went to WilmerHale's Boston offices, revealed that McAfee had sued the firm in Collin County the day before, and demanded that WilmerHale agree to reimburse $6.8 million or face a petition with more aggressive charges. Exh. 3 (Original Petition). The avowed basis of the charges against WilmerHale was an "audit" performed by an entity known as Legal Cost Control, Inc. ("LCCI"). Exh. 2, at ¶ 35; 2nd Am. Compl., ¶ 19 (charging that plaintiff discovered "the truth" based on "the services of a legal audit firm"). McAfee's demand was based principally on LCCI's finding that the descriptions of time entries -- prepared so as to preserve Goyal's attorney-client privilege in the middle of a criminal case -- were inadequate.[6]

        McAfee's various pleadings all charge that WilmerHale's representation has cost more than McAfee, in hindsight, wants to pay. The Original Petition announced that McAfee "paid over $12 million for the legal services and expenses on behalf of Goyal under an indemnification agreement," Exh. 3, ¶ 6, and charged WilmerHale with "negligence" for failing to edit "excessive" bills; "breach of fiduciary duty" for submitting "excessive" bills; and "fraud," based solely on "the foregoing allegations by reference," and a summary assertion that the bills were "false representations," *id.*, ¶ 21, without a suggestion of how they were false. The First Amended Petition repeated that McAfee "paid over $12 million on behalf of Goyal under an indemnification agreement," asserted that McAfee now "stands in the shoes of Goyal," and

---

[6]   LCCI has been rejected in at least four cases as an "expert" in determining the reasonableness of legal fees. *See, e.g., Samuel-Bassett v. Kia Motors Am.,* No. 2199 (Phil. County Ct. of Common Pleas 2007) ("testimony fails on every standard of evaluation" and "was totally lacking in candor, without any credibility, and is rejected"); *Takeda Chem. Indus., Ltd v. Mylan Labs.,* 2007 WL 840368, at *5-7 (S.D.N.Y. Mar. 21, 2007) (affording LCCI's testimony "no weight" because of its arbitrary attack on number of timekeepers, lack of experience with complex litigation and failure to identify let alone apply any standards for its "audit").

repeated the same three claims, but added one more: for "declaratory relief" that, under the "Indemnification Agreement," McAfee is relieved of advancing any additional fees for Goyal because he has been convicted. Exh. 4, ¶ 27.

On May 2, Goyal -- who was not joined by McAfee even though it sought to extinguish his rights -- sought relief. He sued McAfee in Delaware, seeking declaratory relief that, under the Agreement, he is entitled to continued advancement of his defense costs during his sentencing and appeal, and that any adjudication of the reasonableness of fees incurred pursuant to the Agreement must proceed, as the parties agreed, before the state court in Delaware. Exh. 2.

Following removal to this Court, on May 7 McAfee filed -- without leave to amend -- a Second Amended Complaint, in an attempt to divorce its attacks on WilmerHale from the Agreement that, as its earlier pleadings admitted, created and governed the relationship between the parties (but that also, as Goyal had pointed out five days earlier, committed the parties to litigate their differences in Delaware). And so, after invoking the Agreement repeatedly in its earlier pleadings, McAfee deleted all reference to the Agreement in its amended filing in this Court, as if to suggest that McAfee advanced $12 million of Goyal's legal fees and expenses only because it seemed like the right thing to do.

Like its predecessor pleadings, the gravamen of the Second Amended Complaint is that the "billing practices in the Goyal representation were unreasonable and unjustifiable," ¶ 9, including the number of timekeepers, the amount of expenses and the ultimate cost of the representation, ¶¶ 7-10. The pleading incorporates these factual averments in claims for negligence, gross negligence, breach of fiduciary duty, theft and fraud, although not a single false representation is identified in the Petition, First Amended Petition, or Second Amended Complaint.

Instead, all of the charges of unreasonable billing practices are based on review of the WilmerHale invoices by McAfee's "legal audit firm," LCCI. *Id.*, ¶ 19.

### D. McAfee Does an About-Face, at Least in Delaware

On May 9, McAfee appeared at a scheduling conference in Chancery Court in Delaware. In the face of Goyal's demand that McAfee honor its advancement obligation and litigate its challenge to the reasonableness of fees advanced under the Agreement in the forum agreed upon by the parties, McAfee reversed course -- at least in Delaware. *See* Exh. 5 (Delaware transcript).

After having demanded a declaratory judgment in its First Amended Petition that it owed no further fees, McAfee acknowledged in Delaware that Goyal is "entitled to advancement." Tr. 9. As for Goyal's contention that a reasonableness challenge, if it is to be mounted, should be heard now in Delaware, McAfee announced that any dispute about reasonableness of past or future advancements should be "*defer[red] . . . until a final indemnification proceeding.*" Tr. 8. McAfee insisted that the status of its "ultimate" indemnification responsibilities vis-a-vis Goyal is up in the air. In fact, McAfee declared its intent to seek recovery from Goyal of all advances it paid, reasonable or not, if Goyal does not prevail on appeal. Tr. 6, 15. And even if Goyal wins his appeal, McAfee insisted that it was reserving its right to *challenge "reasonableness" later*, in Delaware, Tr. 6, in a "final indemnification proceeding." Tr. 8. All of which naturally led to the question, if there is no dispute in Delaware because the advancement obligation is uncontested and because reasonableness challenges have to be deferred until the "final" indemnification issues are resolved, then what is McAfee doing in Texas? If McAfee is provisionally advancing fees but its ultimate indemnification responsibilities to Goyal remain unresolved, how can McAfee step into Goyal's shoes while he is in effect still wearing them?

The Chancery Court asked McAfee whether in fact the suit in Texas was an "interesting way" of attacking "advancement . . . outside the realm of a debate between the former officer and director" (which is, by contract, committed to the jurisdiction of the Delaware court), which would pose "special risks" to lawyers who are defending cases "funded by advancement under our statute." Tr. 14. To alleviate the Chancery Court's concern, McAfee made a series of representations about this case that are incorrect. McAfee assured the Chancery Court that this action in Texas is not a challenge to reasonableness:

- "this is an extraordinary circumstance where there was actual[] fraud by the law firm," Tr. 14; it's "not [an allegation] that the law firm, you know, should have billed $8 million and they billed $12 million," Tr. 15;

- instead, the allegations "are that there was actual fraud, that there were people who billed things who didn't work on the case," Tr. 14-15.

As a result, the Chancery Court was understandably misled to observe that what is before this Court is "simply a fraud claim, which is separate and apart," and "it's one thing to pay an unreasonable amount [and] another thing to be a victim of fraud." Tr. 18. A glance at the various Texas complaints shows that these representations were incorrect: the "reasonableness" issue that McAfee insisted would be reserved in deference to Goyal's right of advancement is at the heart of this suit, and the summary charge of "fraud" identifies no misrepresentations.

McAfee's admissions in Delaware have not limited the allegations it has made here. In Delaware, McAfee insists that issues of reasonableness should be deferred until Goyal's entitlement to indemnification is ultimately decided, because Goyal may be obliged to return every dime advanced. Here, McAfee seeks to "step into Goyal's shoes" as if it had already settled its accounts with Goyal and Goyal had transferred to McAfee the right to litigate the reasonableness of the fees approved by him. In Delaware, McAfee acknowledges the jurisdiction of the Delaware courts, but claims that the action in this Court is entirely "separate" and has nothing to do with

reasonableness but rather involves work billed by timekeepers who never worked on the case -- a true fraud or theft case. But here, this lawsuit is all about the reasonableness of WilmerHale's fees, and McAfee wants to litigate this issue now -- and with WilmerHale but not Goyal.

The truth does not change across state lines. This lawsuit should not have been brought now, against this defendant, and it does not belong here, when the Agreement specifies Delaware state court as the exclusive forum -- a forum where Goyal and McAfee are already parties.

**Argument and Authorities**

## I.    McAfee's Claims Are Not Ripe.

McAfee's claims simply are not ripe. McAfee's own statements show that its challenge to the reasonableness of WilmerHale's fees and expenses is entirely premature: if Goyal's conviction is affirmed, McAfee will seek all the money back from Goyal without regard to whether the fees and expenses were reasonable; even if he is vindicated, McAfee has reserved the right to recoup any unreasonable charges from Goyal. Thus, whether McAfee will have any right or need to pursue any recovery from WilmerHale is entirely contingent on future events.

McAfee's statements to the Delaware court were clear and unequivocal:

- "[Goyal] has already been convicted, but he could lose his appeal, in which case he has to pay all those fees back, and it doesn't matter if they are reasonable or unreasonable. The Court will never have to decide that issue. They will have to be repaid." Exh. 5, at 6.

- "If . . . his conviction is affirmed, we are going to seek recoupment of every dollar that we paid him, and it doesn't really matter whether the charges were reasonable or not." *Id.* at 15.

Thus, McAfee's claims in this Court are directed to an issue -- the reasonableness of WilmerHale's fees -- that may be entirely academic. If the Chancery Court, which McAfee

agreed should have exclusive jurisdiction, need not concern itself now with whether Goyal's fees were reasonable, then there is no ripe case or controversy before this Court.

### A. Claims Are Not Ripe if They Are Contingent Upon Uncertain Future Events.

Federal courts apply established "justiciability doctrines" to determine if a case belongs in court. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). One such doctrine is ripeness. *See id.*; *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008). "Prudentially, the ripeness doctrine exists to prevent the courts from wasting our resources by prematurely entangling ourselves in abstract disagreements. . . ." *Nat'l Treas. Employees Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996). "These prudential concerns ensure that changing hypothetical circumstances or lack of party interest does not make resolution of the legal issues unnecessary." *Valley v. Rapides Parish Sch. Bd.*, 145 F.3d 329, 332 (5th Cir. 1998). The goal is to keep out of court matters that are premature because the alleged injury may never occur. *See Foster*, 205 F.3d at 857.

The ripeness doctrine assesses both (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). A claim is not fit for review if "it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) (quotation marks omitted).

### B. McAfee's Claims Are Not Fit for Judicial Decision.

McAfee's claims are not fit for judicial decision because they are entirely contingent upon events that have not yet occurred -- and upon alleged injury to McAfee that may never be realized. McAfee's case rests on allegations that the fees advanced by McAfee to WilmerHale on behalf of Goyal are unreasonable because they result from overstaffing or are otherwise excessive. But if Goyal's conviction is affirmed on appeal, Goyal may be obligated

under the Indemnity Agreement to repay all the money that McAfee advanced.[7] And even if Goyal is vindicated on appeal, McAfee has made clear its intention to challenge the "reasonableness" of the fees advanced in an "indemnification" proceeding in Delaware. Exh. 5, at 6, 8.

McAfee has represented that it intends to pursue its rights under the Agreement to recover from Goyal all or at least some of the funds it has advanced. If McAfee is repaid in whole or in part by Goyal, it will have recouped monies it paid to WilmerHale -- including those allegedly "unreasonable" and "unjustified" fees that it claims as injury. McAfee's claims in this Court are premature. *See Foster*, 205 F.3d at 857 (case is not ripe if injury is speculative and may never occur); *Carmichael*, 343 F.3d at 761 (case not ripe if contingent upon future events).[8]

That McAfee's claims are not ripe is confirmed by McAfee's unwarranted reliance upon the doctrine of subrogation. According to McAfee, because it "paid [WilmerHale] for legal services and expenses on behalf of Goyal," 2nd Am. Compl. ¶ 13, it "stands in the shoes of Goyal and may bring all claims and is entitled to all remedies available to Goyal." *Id.* ¶ 14. But advances

---

[7]    *See* Exh. 1 ¶ 6; *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212-13 (Del. 2005) (Delaware law "expressly contemplates that corporations may confer a right to advancement that is greater than the right to indemnification and recognizes that *advances must be repaid if it is ultimately determined that the corporate official[s] [are] not entitled to be indemnified*").

[8]    *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928 (4th Cir. 1977), is instructive. There, a shipowner, a pier operator, and a pier designer/builder disputed who was responsible for a deadly accident on the pier. *Id.* at 929. After the pier operator was found primarily liable, the designer/builder and the shipbuilder sought indemnification from the pier operator for expenses incurred in defending a separate wrongful death action brought by the families of the victims. *Id.* The court concluded that the indemnification suit was not ripe because the legal liability of the indemnitee had not yet been established. *Id.* at 932. "The fact that [the shipowner and designer/builder had] already incurred some expenses in defending those actions does not make ripe their claims for indemnification." *Id.* No one could "tell . . . what the outcome of those actions will be," and any award of "indemnification against all liability and expenses, incurred or which may be incurred . . . in those actions, could lead to incongruous results." *Id.* For similar reasons, McAfee's claims are premature.

are provisional, not *final* -- *i.e.,* they are in the nature of a loan to the indemnitee -- and for that very reason do *not* result in subrogation.[9] As McAfee insisted in Delaware, even if Goyal wins on appeal, McAfee's advances have been made without prejudice to its right to contest reasonableness and the amount of the indemnification owed to Goyal, in an ultimate "indemnification proceeding," Exh. 5, at 8, in Delaware. That is exactly the procedure contemplated by the Agreement, which provides for a "mandatory duty to advance," subject to recoupment by the indemnitor in an "ultimate" proceeding. Exh. 1, ¶ 6. In this Court, McAfee claims to stand in Goyal's shoes, but as McAfee insisted in Delaware, its account with Goyal is by no means settled, and McAfee has no right, and is in no position, to assert Goyal's claims.

## C. McAfee Will Suffer No Hardship if the Case Is Not Considered Now, but Both WilmerHale and Goyal Will Suffer Hardship if this Case Proceeds.

In determining ripeness, courts also consider "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. In this case, there would be no hardship to McAfee if its claims were dismissed pending resolution of the indemnification issues with Goyal. McAfee paid WilmerHale's fees for five years. It filed this lawsuit before ever identifying or discussing its purported concerns about WilmerHale's charges with either WilmerHale or Goyal. When invited to join issue and set a hearing on reasonableness in the Chancery Court proceeding in Delaware, *McAfee itself insisted that the reasonableness issue should be deferred until after Goyal's fate is settled, and the ultimate indemnification issues can be addressed.* Exh. 5, at 8.

---

[9] *See Metro. Prop. & Cas. v. Harper*, 7 P.3d 541, 551 (Or. App. 2000) ("An insurer who makes a loan to its insured is not subrogated to the insured's claims because there has been no outright payment that effectively transfers title to the claim from the insured to the insurer."); Part IV(B)(1)(a), *infra* (discussing additional authorities).

McAfee's claims should be dismissed pending the "ultimate" issue of indemnification, which is to be resolved in Delaware.

## II.    McAfee Must Comply with the Forum Selection Clause.

This action should also be dismissed under Rules 12(b)(1) and (3) because McAfee brought its claims in the wrong forum. The Indemnity Agreement contains a forum selection clause mandating that disputes instituted under the Agreement be brought in Delaware state court:

> The Company and the Indemnitee each hereby irrevocably consent to the jurisdiction of the courts of the State of Delaware for all purposes in connection with any action or proceeding which arises out of or relates to this Agreement and agree that any action instituted under this Agreement shall be brought only in the state courts of Delaware.

Exh. 1, ¶ 19. Because McAfee's present claims against WilmerHale are "instituted under" and relate to the Agreement, those claims fall within the forum selection clause. WilmerHale is not a signatory to the Indemnity Agreement, but a non-signatory can enforce a forum selection clause in the circumstances present here.

### A.    McAfee's Claims Fall Within the Forum Selection Clause.

A federal court in the Northern District interpreting a similar forum selection clause, which applied to claims "assert[ed] under" the contract, has explained that all "claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *7 (N.D. Tex. May 9, 2005). Here, all of McAfee's claims arise out of its contractual relationship with Goyal and implicate the Agreement, and thus fall within the forum selection clause.

First, all of McAfee's claims against WilmerHale depend upon the allegation that WilmerHale induced McAfee to advance expenses to Goyal that were "unreasonable." 2nd Am. Compl. ¶¶ 8-9. Reasonableness is an issue that the Agreement speaks to directly, as it requires indemnification for "reasonable" attorney's fees. *See* Exh. 1, ¶ 1(b) ("For purposes of this

Agreement, 'expenses' include all direct and indirect costs of any type or nature whatsoever (including, without limitation, all attorneys' fees and related disbursements . . .) actually and *reasonably incurred* by the Indemnitee . . . ."). McAfee's claim to recoup fees paid, under any of the various theories asserted in its Second Amended Complaint, thus necessarily implicates rights and obligations under its Agreement with Goyal.

Second, McAfee's claim that it is subrogated to Goyal's rights, *see* 2nd Am. Compl. ¶¶ 11-14, arises from and implicates the Agreement. The Agreement contains a subrogation clause, Exh. 1, ¶ 12, and McAfee's subrogation theory necessarily implicates that clause. *See Fortis Benefits v. Cantu*, 234 S.W.3d 642, 646-48 (Tex. 2007) (where a specific right of subrogation is established by contract, subrogation claim is contractual in nature).[10] McAfee's effort to invoke subrogation so it can stand in Goyal's shoes to assert claims against WilmerHale is thus properly subject to the Agreement's forum selection clause.

The forum selection clause applies to McAfee's claims notwithstanding that it has characterized some of its claims as sounding in tort rather than in contract:

> There is no basis for finding that where parties contract a choice of forum the agreement governs only disputes directly under the contract. . . . [Such clauses reach] . . . claims pendent to or arising out of the contractual relationship. . . .

*Stewart Org., Inc. v. Ricoh Corp.*, 779 F.2d 643, 650 (11th Cir. 1986), *adhered to*, 810 F.2d 1066 (11th Cir. 1987) (en banc), *aff'd and remanded on other grounds*, 487 U.S. 22 (1988).[11]

---

[10]   McAfee's entitlement to subrogation may be defined by Delaware law, not Texas law, because the Agreement specifies that Delaware law will govern it. However, there do not appear to be any conflicting cases in Delaware that would render it improper to look to *Fortis Benefits*.

[11]   *Accord Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) (contract-related tort claims involving same facts as contract claim covered by forum selection clause); *Nextrade, Inc. v. Hyosung (Am.), Inc.*, 2005 WL 348400, at *2 (9th Cir. Feb. 14, 2005) (where non-contract claims directly related to interpretation of an agreement, forum selection clause applies); *see Barnette v. United Research Co.*,

**B. WilmerHale Is Entitled To Enforce the Forum Selection Clause.**

WilmerHale is entitled to enforce the forum selection clause. First, WilmerHale is a "transaction participant" with respect to the Agreement containing the forum selection clause. Courts regularly hold that "transaction participants" may benefit from and be subject to forum selection clauses, even if they are not signatories to the agreement at issue.[12] WilmerHale is Goyal's counsel in proceedings that are governed by the Agreement, and its fees have been advanced under the terms of that Agreement. It is therefore a "transaction participant," a term that generally encompasses representatives, employees or agents of one of the signatories to the contract. *See Accelerated Christian Educ'n, Inc. v. Oracle Corp.*, 925 S.W.2d 66, 75 (Tex. App.--Dallas 1996), *abrogated on other grounds by In re AIU Ins. Co.*, 148 S.W.3d 109, 116, 121 (Tex. 2004). WilmerHale is the type of representative that both McAfee and Goyal would have anticipated would be affected by the Agreement, because the Agreement provides that McAfee is to indemnify Goyal with respect to attorney's fees and expenses.

Second, McAfee is equitably estopped from resisting application of the forum selection clause because it is asserting claims against WilmerHale that rely on the Agreement. *See Alternative Delivery Solutions*, 2005 WL 1862631 at *15-16. "[T]o allow a party to 'have it both ways' by asserting claims intertwined with the agreement but denying the forum selection clause's applicability would 'fly in the face of fairness.'" *Id.* at *15. Not only are McAfee's non-fraud

---

823 S.W.2d 368, 370 (Tex. App.--Dallas 1991, writ den.) ("Pleading alternate non-contractual theories is not alone enough to avoid forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms.") (quotation marks omitted).

[12] *See Brock v. Entre Computer Ctrs., Inc.*, 740 F. Supp. 428, 430-31 (E.D. Tex. 1990); *Tex. Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997) ("Courts have ruled that a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses.") (internal quotation marks omitted); *accord, Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984); *see also Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co.*, 2005 WL 1862631, *15-16 (W.D. Tex. July 8, 2005).

claims directly dependent upon the subrogation clause of the Agreement, but the entire thrust of its lawsuit seeks a ruling on reasonableness of advanced legal expenses, which is central to its obligations under the Agreement. McAfee is equitably estopped from pursuing such claims while seeking to deny application of the Agreement's forum selection clause.

## III. Goyal Is an Indispensable Party Who Cannot Be Joined.

Fed. R. Civ. P. 19, entitled "Required Joinder of Parties," also requires dismissal of this action, which this Court may enforce under Rule 12(b)(7). Rule 19 sets forth a two-part framework: Rule 19(a) lays out factors for determining whether an absent person is sufficiently relevant to the dispute that he ought to be joined if possible, *i.e.*, whether he is necessary. If a party is necessary, but cannot be joined to the proceeding for some reason, Rule 19(b) identifies the factors that the court should consider determining whether the case should continue in the party's absence, or whether it should be dismissed. Goyal is a necessary party under Rule 19(a), and he cannot be joined. Because of the unfairness -- both to Goyal and to WilmerHale -- of proceeding without him under the factors outlined in Rule 19(b), dismissal is required here.

### A. Goyal Is a Person Who Is Required To Be Joined if Feasible.

Rule 19(a) provides that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if the absent person claims an interest in the subject of the action and his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest. Rule 19(a) further states that "[i]f a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party." Fed. R. Civ. P. 19(a)(3).

First, Goyal "claims an interest relating to the subject of the action," and he cannot protect that interest when he is absent. He is indispensable because "[f]ederal courts consistently

hold that a party to an agreement in dispute is an indispensable party under Fed. R. Civ. P. 19(a) in a suit seeking to rescind, annul, or interpret that agreement." *Altava Health Mktg., Ltd. v. Shortgrass, Inc.*, 2005 WL 2277598, at *9 (S.D. Tex. Sept. 15, 2005); *accord Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004) ("[i]t is well-established that a party to a contract which is the subject of the litigation is a 'necessary' party"); *Delcon Constr. Corp. v. HUD*, 205 F.R.D. 145, 147-48 (S.D.N.Y. 2002); *Global Dis. Travel Servs., LLC v. TWA*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997).

McAfee seeks to litigate in Goyal's absence the reasonableness of the fees that it has already paid on his behalf and at his request. McAfee's interest in those claims depends upon its ability to step into Goyal's shoes, a question that turns on the interpretation of the Agreement and the governing law. Goyal must be heard on the question whether McAfee can take control of his claims. Goyal also has a vital interest in the disposition of any such claims, because McAfee has announced its intention to come after him to recoup any payments found to be unreasonable. Resolution of these issues may be treated as conclusive as to him, regardless of whether McAfee were to prove unreasonableness (and thereby provide a predicate for a recovery against Goyal) or fail to do so (and thereby undermine Goyal's ability to pursue a recovery against WilmerHale if Goyal should be ordered to return the advances). Indeed, even apart from the effect on Goyal of a final disposition of these claims, Goyal has a compelling interest in imposing limits on discovery that McAfee may demand from WilmerHale, where WilmerHale's work product reflects his confidences and the party seeking the discovery, McAfee, is cooperating with the Government in this ongoing criminal proceeding.

Separately, Goyal is a necessary party from WilmerHale's standpoint, because to exclude him would be to leave WilmerHale "subject to a substantial risk of incurring double,

multiple, or otherwise inconsistent obligations . . ." Fed. R. Civ. P. 19(a)(1)(B). WilmerHale would be attempting to defend itself from charges that its time entries were incomplete (and, on that basis, that the time spent was unnecessary), while seeking to preserve the confidences of its client. The fact that Goyal and his counsel would not be heard from when the Court addresses these issues would only exacerbate the conflicting obligations imposed on WilmerHale.

**B.      Because Goyal Cannot Be Joined and He Would Be Prejudiced if This Action Proceeded in His Absence, the Action Should Be Dismissed.**

Joinder of Goyal is not feasible here because venue is improper. The Agreement confers on Goyal the right to litigate claims instituted under or arising out of the Agreement in state court in Delaware. Through the lawsuit he brought against McAfee in Delaware Chancery Court, Goyal has demonstrated his intent to invoke that right. Exhs. 2, 5. If joined here, he would object to venue, and he would be entitled to be dismissed from this action. *See* Fed. R. Civ. P. 19(a)(3).

Because joinder is improper, Rule 19(b) calls for a determination of "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003). The factors are (1) the extent to which prejudice will result to the absent person; (2) the court's ability to shape relief to avoid prejudice to that person; (3) the adequacy of the relief available to the remaining parties in that person's absence; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Dismissal here is warranted.

Goyal would be prejudiced if this action went forward in his absence. Goyal's liberty is at stake in the criminal case in which WilmerHale has represented him and continues to represent him. Goyal should not be forced to wonder if his attorneys are being pressured to describe the precise nature of their services for him, putting his confidences at risk, in order to

reduce their exposure to claims of "fraud" and "theft," particularly given the sensitive nature of the work done on his behalf and the role of McAfee as a cooperating witness for the Government.

Moreover, as described above, Goyal has substantial interests in the issue of the reasonableness of the advances, not only because the claims themselves threaten his relationship with his lawyers, but because their disposition can affect his rights and liabilities to both McAfee and WilmerHale. Without joining Goyal to the case as a party, his ability to protect these sorts of interests is impaired. The Sixth Circuit has held in a case involving legal malpractice claims, that one of two co-clients who had not joined the action was an indispensable party in whose absence a legal malpractice case could not proceed. *Jenkins v. Reneau*, 697 F.2d 160, 161-63 (6th Cir. 1983).[13] Here, Goyal is the counter-party as between Goyal and McAfee, and his attorney-client relationship with WilmerHale is ongoing. Indeed, Goyal is the *only* connection between McAfee and WilmerHale. Accordingly, there is an even stronger basis than in *Jenkins* for concluding that Goyal is an indispensable party in McAfee's action against Goyal's lawyers for the alleged overbilling of Goyal.

As noted above, it is not clear at the present time who, as between McAfee and Goyal, will ultimately bear the responsibility for WilmerHale's fees, because no court has resolved whether Goyal is entitled to be indemnified. If this case proceeds in Goyal's absence, WilmerHale

---

[13]    In a related line of cases, courts have also repeatedly held that co-obligees under contracts are all indispensable parties under Rule 19(b) when one of them sues their common obligor. *See Harrell & Sumner Contr. Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977); *Bry-Man's, Inc. v. Stute*, 312 F.2d 585 (5th Cir. 1963); *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 2008 WL 744823, at *6-7 (S.D. Tex. Mar. 19, 2008); *Evergreen Int'l Aviation, Inc. v. Banc of Am. Secs., LLC*, 2004 WL 1717627, at *3-4 (D. Or. July 29, 2004); *Schiavone Constr. Co. v. City of New York*, 1995 WL 714339, at *4 (S.D.N.Y. Dec. 5, 1995). The purposes of this rule are to facilitate consistent enforcement of the same obligations owed to multiple parties and to promote finality. *See Bry-Man's*, 312 F.2d at 587-88 & n.6. Here, Goyal is even more indispensable than a co-obligee because *only* he, and *not* McAfee, is a contractual obligee of WilmerHale with respect to the very services over which McAfee has sued.

faces the prospect of seriatim litigation with the non-party not bound. Even a judgment in WilmerHale's favor on the issue of reasonableness might still leave Goyal free to relitigate that same issue in a later lawsuit against WilmerHale.

Finally, "the plaintiff" -- McAfee -- "would have an adequate remedy if the action were dismissed for non-joinder." Indeed, McAfee is already present in Delaware, where it has assured the Chancery Court it intends to recover all or some of the fees it has paid, in the forum that McAfee chose for determining its rights. WilmerHale also is prepared to appear in the Delaware proceeding without contesting personal jurisdiction or venue.

Rule 19(b) requires dismissal of this action as well.

## IV. McAfee's Claims Violate Rule 9(b) and Otherwise Fail To State a Claim.

Dismissal is also required because McAfee's claims of fraud and theft by fraud violate Rule 9(b), and its remaining claims fail to state a claim upon which relief can be granted.[14]

### A. McAfee's Fraud Claims Are Far Too Vague To Comply with Rule 9(b).

Rule 9(b) provides that when "alleging fraud ... a party must state with particularity the circumstances constituting [the] fraud." "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000). Because fraud allegations can damage a defendant's reputation, Rule 9(b) is designed to eliminate speculative fraud actions predicated only on the hope of developing supporting facts through discovery. *Scott v. Pfizer, Inc.*, 2008 WL 508641, at *6 (E.D. Tex. Feb. 21, 2008).

---

[14] WilmerHale relies predominantly on Texas law for purposes of its 12(b)(6) motion for dismissal, because that is the law McAfee cites in its Second Amended Complaint. Delaware law governs McAfee's claim that it is entitled to be subrogated to Goyal's rights, because its Agreement with Goyal contains a choice of law provision designating Delaware law.

McAfee's "reasonableness" attack is in fact premised on information supplied by WilmerHale's bills: the number of timekeepers and amounts charged. McAfee's fraud and theft-by-fraud claims are not pled with sufficient particularity to satisfy the pleading standard of Rule 9(b). McAfee does not identify which statements are false or why they are false.

To comply with that Rule, a party alleging fraud must specify each allegedly misleading statement; identify the speaker; state when and where each statement was made; plead with particularity the contents of the false representations; plead with particularity what the person making the representation obtained thereby; and explain the reason or reasons why the statement is fraudulent. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2000); *U.S. ex rel. Siemens Bldg. Techs., Inc. v. Grot, Inc.*, 2005 WL 2012263, at *1 (E.D. Tex. Aug. 19, 2005) (Bush, Mag. J.) (recommending dismissal of claims under Rule 9(b) where plaintiff did not specify which specific statements were false or misleading). In other words, a party pleading fraud must set forth "the who, what, when, and where" of the fraud for the claim to be viable. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997); *GMAC Commercial Mortgage Corp. v. East Tex. Holdings, Inc.*, 441 F. Supp. 2d 801, 809-10 (E.D. Tex. 2006) (Schneider, J.) (dismissing under Rule 9(b) with leave to amend when complaint failed to allege time and place of specific false statements, and why those statements were fraudulent).

Rule 9(b) applies not just to claims specifically captioned as "fraud" but also to claims that sound in fraud. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (requirements of Rule 9(b) apply to cases in which the gravamen of the claim is fraud, even if not labeled fraud). McAfee's "Theft" claim, which alleges that WilmerHale "unlawfully appropriated millions of dollars from Plaintiff by deception and fraudulent billing," 2nd Am. Compl., ¶ 21, sounds in fraud and thus must comply with Rule 9(b).

McAfee's allegations of fraud are defective in every respect. McAfee's fraud claim merely alleges that "Defendant made material representations to plaintiffs that were false," *id.*, ¶ 16, without stating what those misrepresentations were. Similarly, McAfee's theft-by-fraud claim alleges only that WilmerHale "unlawfully appropriated money" by "deception and fraudulent billing," *id.*, ¶ 21, but fails to identify in what respect WilmerHale's bills were allegedly deceptive or false. McAfee evidently contends that WilmerHale had too many timekeepers and charged too much, but the number of timekeepers and the amount of each invoice was known to McAfee when it paid each bill, and it does not contend otherwise. The allegation that the fees were excessive, all of which fees were fully disclosed, does not state a fraud claim. *See Fulbright & Jaworski, L.L.P. v. Mariner Health Care, Inc.*, 2006 WL 4007923, at *10 (W.D. Tex. May 22, 2006) (Mathy, Mag. J.) (recommending summary judgment on fraud claims when client had reviewed bills but later claimed legal fees were unreasonable, but there was no allegation that the firm had not done the work that was billed). Rule 9(b) plainly requires more. WilmerHale must have "adequate notice of the nature and grounds of the claim" against it. *Hart*, 199 F.3d at 247 n.6. McAfee's claims of fraud and theft should be dismissed.

**B.     McAfee's Other Claims Should Be Dismissed Under Rule 12(b)(6).**

A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (emphasis in original) (quotation marks omitted). Further, "a plaintiff must plead specific facts, not mere conclusory allegations." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *United States v. Williams*, 2008 WL 783555, at *2 (E.D. Tex. Mar. 20, 2008) (Schneider, J.) (mere conclusory allegations not accepted).

**1.    McAfee's Subrogation Claims Must Be Dismissed.**

"Subrogation" is not a free-standing cause of action, but rather involves one party asserting claims as though it were standing in the shoes of another. *See Kimbell v. Penn Mut. Ins. Co.*, 2007 WL 315339, at *2 (Del. Super. Ct. Jan. 31, 2007). It appears that McAfee seeks to assert each of its non-fraud causes of action as Goyal's purported subrogee, but it has alleged no fact that would support its right to assert any such claims. Each is defective.

McAfee has no valid claim for subrogation because it has only *advanced* Goyal's legal fees and expenses. It has not finally given him anything, but has instead reserved the right to recover the entirety of the advanced funds from Goyal. It would be against public policy to allow a third party such as McAfee to be subrogated to a client's claims against his lawyers -- contrary to the express desire and interest of the client -- in the midst of an ongoing legal representation.

**a.    McAfee's Subrogation Claim Fails Because It Has Not Alleged that a Final, Non-Contingent Payment Has Been Made.**

McAfee cannot proceed with its subrogation claim because its advancement of funds to Goyal is contingent -- as McAfee has admitted in Delaware, Goyal may be forced to return the funds if he is found not entitled to be indemnified. Advances and other contingent payments are understandably insufficient to trigger subrogation rights.[15] This issue most frequently arises in the context of loan receipt agreements, which are agreements that if and when an insured recovers against a third party, the recovery will be paid over to the insurer to reimburse it for the amount advanced. *See United States Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc.*, 16

---

[15]    Similarly, the subrogee may not enforce the rights of the subrogor "until the claim of the . . . debtor has been paid in full." *Fleetwood v. Med Ctr. Bank*, 786 S.W.2d 550, 554-55 (Tex. App.--Austin 1990) (quotation marks omitted); *see State Farm Mut. Auto. Ins. Co. v. Waibel*, 2001 WL 252071, at *3 (Tex. App.--Austin Mar. 14, 2001) ("An insurer cannot enforce its subrogation interest until the insured has fully recovered.").

P.3d 1278, 1283 (Wash. Ct. App. 2001). When an insurer's policy with its insured allows it to advance payment subject to a "loan receipt agreement," an advance under the policy does not entitle the insurer to subrogation. "An insurer [that] makes a loan to its insured is not subrogated to the insured's claims because there has been no outright payment that effectively transfers title to the claim from the insured to the insurer." *Metro. Prop. & Cas. v. Harper*, 7 P.3d 541, 551 (Or. App. 2000). *Accord, United States Oil & Ref. Co.*, 16 P.3d at 1285 & n.35; *Safeway Ins. Co. v. Collins*, 963 P.2d 1085, 1087 (Ariz. Ct. App. 1998); *Cent. Nat'l Ins. Co. of Omaha v. Dixon*, 559 P.2d 1187, 1188-89 (Nev. 1977); *Hiebert v. Millers' Mut. Ins. Ass'n of Ill.*, 510 P.2d 1203, 1210 (Kan. 1973).

These principles apply here. Delaware law (which governs the Indemnity Agreement between McAfee and Goyal, Exh. 1, ¶ 18), confirms that an "advancement is best thought of as credit advanced to a director, officer, employee, or agent of a corporation." *Fasciana v. Elec. Data Sys.*, 829 A.2d 160, 175 n.50 (Del. Ch. 2003). And, in fact, McAfee nowhere alleges that its advances to Goyal are final or non-contingent. Indeed, McAfee has recently declared its intention to seek full repayment from Goyal under the Indemnity Agreement if his conviction is affirmed on appeal.[16] McAfee has only provisionally advanced legal fees and expenses, and Goyal may have to pay everything back. Because McAfee has not alleged that its advances to Goyal have been final and non-contingent -- and has asserted the opposite in Delaware -- its advances do not give rise to subrogation, and its subrogated claims must be dismissed.

---

[16]  *See* Exh. 5, at 15 (statement by Delaware counsel for McAfee that "If . . . his conviction is affirmed, we are going to seek recoupment of every dollar that we paid him . . . ."); *id.* at 6 (statement by Delaware counsel for McAfee that "he could lose his appeal, in which case he has to pay all those fees back . . . They will have to be repaid.").

### b. McAfee's Subrogation Claims Purporting To Assert Goyal's Rights Against His Attorneys Should Be Dismissed.

Subrogating McAfee to any claims Goyal might potentially assert against WilmerHale would also be contrary to public policy. Numerous courts have disallowed claims against lawyers based on subrogation to their clients because of the potential for interfering with the attorney-client relationship and the attorney-client privilege. Here, it would be particularly disruptive to Goyal's attorney-client relationship with WilmerHale to allow his former employer to pursue purported claims against his attorneys, contrary to his wishes and while the legal representation is ongoing. Such a claim would also be disruptive to the indemnification and advancement statutory scheme established by Delaware law.

Numerous courts have refused to allow the subrogation of claims against lawyers on grounds of public policy.[17] These cases typically have involved an effort by an insurer to sue its insured's counsel for legal malpractice in order to recoup monies it had paid out on its policies.

California courts, for example, have emphasized the "unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship." *Musser v. Provencher*, 48 P.3d 408, 415 (Cal. 2002). They have also determined that allowing the subrogation of claims against one's lawyers could call into doubt the

---

[17] *See, e.g., Cont'l Cas. Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 107 (2d Cir. 1991) (no subrogation of legal malpractice claims under Connecticut law); *Essex Ins. Co. v. Tyler*, 309 F. Supp. 2d 1270, 1274-75 (D. Colo. 2004) (same under Colorado law); *Nat'l Union Fire Ins. Co. v. Salter*, 717 So.2d 141, 142-43 (Fla. Dist. Ct. App. 1998) (same under Florida law); *Am. Cont'l Ins. Co. v. Weber & Rose, P.S.C.*, 997 S.W.2d 12, 13-14 (Ky. Ct. App. 1998) (same under Kentucky law); *Am. Employers' Ins. Co. v. Med. Protective Co.*, 419 N.W.2d 447, 448-49 (Mich. Ct. App. 1988) (same under Michigan law). Those courts that have allowed subrogation of claims against attorneys have done so in completely different contexts and for independent public policy reasons that are not applicable in this case. *See Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992) (allowing subrogation claim for legal malpractice by excess insurer against insured's counsel because, *inter alia*, insured/client had no exposure and therefore no economic incentive to ensure proper defense was put forth by his attorney, but emphasizing that holding was limited to the particular facts of that case).

undivided loyalty and diligence that an attorney owes to his client; result in the commercialization

of malpractice claims, which would debase the profession; encourage unjustified lawsuits; increase

the number of malpractice suits; encourage champerty; and ultimately reduce the public's access to

legal services. *See id.* at 415-16. This same policy concern is recognized in Texas law barring the

assignment of legal malpractice claims. *See Charles v. Tamez*, 878 S.W.2d 201 (Tex. App.--

Corpus Christi 1994, writ denied) (holding that ordering turnover of a legal malpractice claim

would be inappropriate). In *Charles*, the court noted that legal malpractice actions are

"intrinsically personal" in nature. *Id.* at 207.[18]

All of these concerns would be implicated by McAfee's attempt to involuntarily

subrogate Mr. Goyal's claims against WilmerHale here. McAfee has challenged WilmerHale's

professional judgments about the nature, need for, and amount of work performed. These are

precisely the types of claims that would significantly intrude on the ongoing attorney-client

relationship, as extensive document discovery would undoubtedly be sought. To defend itself,

WilmerHale might be called upon to reveal work product or even attorney-client privileged

information, as counsel being sued by a client may be permitted to do. *See Qualcomm Inc. v.

Broadcom Corp.*, 2007 WL 2900537 at *1 (S.D. Cal. Sept. 28, 2007). Goyal is currently in the

midst of a serious criminal proceeding, in which he is relying on his counsel at WilmerHale for

advice and representation as he prepares for sentencing, appeal, and a possible re-trial. Public

---

[18] *See also Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.--San Antonio 1994, writ ref'd); *Britton v. Seale*, 81 F.3d 602 (5th Cir. 1996); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 392-93 (Tex. App.--Houston [14th Dist.] 1997, no writ) ("We agree with the Fifth Circuit [in *Britton*] and hold that *Zuniga* prohibits all assignments of legal malpractice claims," and further holding that the same policy reasons bar assignment of the non-client's related intentional tort claims like fraud.)

policy simply does not countenance permitting a stranger to the attorney-client relationship -- and indeed, a cooperating witness for the prosecution -- to take over the purported breach of duty claims of a client who is still relying on his counsel for advice, and to delve into work product and privileged communications.

### 2. McAfee's Claims of Negligence, Gross Negligence and Breach of Fiduciary Duty Must Be Dismissed.

If McAfee cannot stand in Goyal's shoes, then its direct-action claims for negligence, gross negligence and breach of fiduciary duty must be dismissed under Rule 12(b)(6) because McAfee does not have an attorney-client relationship with WilmerHale, and it has not pleaded facts giving rise to a fiduciary duty.

Texas law does not recognize a cause of action for legal malpractice or negligence asserted by a party that does not have an attorney-client relationship with the attorney through privity of contract. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 793 (Tex. 1999) (Texas is a "strict privity" jurisdiction); *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996); *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 806-07 (5th Cir. 1998); *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 621 (Tex. App.--Houston [1st Dist.] 1993, writ denied).[19] The Texas Supreme Court has held that an attorney owes no duty to third parties who are not his clients, even if the third party is damaged by the attorney's negligent representation of the client. *See Barcelo*, 923 S.W.2d at 577. This rule ensures that attorneys may in all cases zealously represent their clients without fear of suit from third parties that may compromise that representation. *Id.* at 578-79.

---

[19] McAfee relies upon Texas law in its complaint. For purposes of this motion only, WilmerHale assumes that Texas law governs McAfee's right to maintain a direct action claim against WilmerHale.

-28-

Because McAfee does not allege that it is in privity with WilmerHale through an attorney-client relationship, McAfee has no standing to maintain actions for negligence. Therefore, its direct-action claims for negligence and gross negligence must be dismissed.

Similarly, McAfee has not alleged any facts to support its conclusory assertion that WilmerHale owed it a fiduciary duty. 2nd Am. Compl. ¶¶ 29-30. Moreover, Texas law establishes that an attorney does *not* have a fiduciary duty to non-clients. *See Swank v. Cunningham*, ___ S.W.3d ___, 2008 WL 796982, at *15 (Tex. App.--Eastland Mar. 27, 2008, no pet.); *Safeway Managing Gen. Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166, 168 (Tex. App.--San Antonio 1998, no pet.); *Scherrer v. Haynes & Boone, LLP*, 2002 WL 188825, at *3 (Tex. App.--Houston [1st Dist.] Feb. 7, 2002, no pet.). The allegations in these two paragraphs are inadequate to state a cause of action for breach of fiduciary duty, and so McAfee's breach of fiduciary duty claim should be dismissed. To the extent that a breach of fiduciary duty claim contains a component of fraud or deception -- which is impossible to determine from the conclusory two-paragraph pleading of it -- the claim also should be dismissed for failure to satisfy the standards of Rule 9(b). *See Ingalls v. Edgewater Private Equity Fund III, L.P.*, 2005 WL 2647962, at *5 (S.D. Tex. Oct. 17, 2005) (Rule 9(b) applies to fiduciary claim that rests on the same alleged facts as fraud claim). Nor does Texas law permit plaintiffs to characterize claims that actually sound in negligence as claims for breach of fiduciary duty. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex. App.--Houston [14th Dist.] 2002, no pet.).

McAfee's claim for disgorgement or fee forfeiture likewise should be dismissed: disgorgement is not a free standing cause of action, but rather is a remedy for serious breaches of fiduciary duties to a client. *See Swank*, 2008 WL 796982, at *2. In the absence of a fiduciary duty, there is no basis for this claim.

## Conclusion and Prayer

Defendant WilmerHale respectfully requests that this Court dismiss this action, pursuant to Fed. R. Civ. P. 12(b) (1), (3), (6), (7), and 9(b).

Dated: June 9, 2008

Of Counsel:

Shawn M. Bates
State Bar No. 24027287
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 732-8000
(713) 632-8002 (Fax)

Gerson A. Zweifach
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, D.C. 20005
202-434-5534
202-434-5029 (Fax)

Respectfully submitted,

*R. Paul Yetter* w/permission, SB

R. Paul Yetter
State Bar No. 22154700
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 732-8000
(713) 632-8002 (Fax)

Attorney-in-Charge for Defendant Wilmer Cutler Pickering Hale and Dorr LLP

## Certificate of Service

I certify on this 9th day of June, 2008, a true copy of this motion was filed and served electronically on all counsel of record by e-filing, facsimile, hand delivery, and/or certified mail, return receipt requested.

*Shawn M. Bates*

Shawn M. Bates