UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MCAFEE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-CV-160 |
| | § | |
| WILMER CUTLER PICKERING | § | |
| HALE AND DORR LLP, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT WILMER CUTLER PICKERING HALE AND DORR LLP'S
CORRECTED MOTION TO DISMISS THE THIRD AMENDED COMPLAINT UNDER
RULES 12(b)(1), (3), (6), (7), AND 9(b), AND REQUEST FOR ORAL HEARING**

Of Counsel:

Gerson A. Zweifach
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, D.C. 20005
202-434-5534
202-434-5029 (Fax)

R. Paul Yetter
Shawn M. Bates
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas 77010
(713) 732-8000
(713) 632-8002 (Fax)

Attorneys for Defendant Wilmer Cutler
Pickering Hale and Dorr LLP

July 17, 2008

# Table of Contents

Table of Authorities ............................................................................................ iii

Summary of Motion ............................................................................................. 1

Preliminary Statement .......................................................................................... 3

    A.    The 1996 Indemnity Agreement ............................................................ 3

    B.    McAfee Complies With Its Advancement Obligation for Five Years .... 4

    C.    McAfee Reduces Corporate G&A in October 2007. ............................. 5

    D.    McAfee Does Another About-Face, at Least in Delaware. ................... 7

Argument and Authorities ..................................................................................... 9

I.    McAfee's Claims Are Not Ripe ..................................................................... 9

    A.    Claims Are Not Ripe if They Are Contingent Upon Uncertain Future Events. .... 10

    B.    McAfee's Claims Are Not Fit for Judicial Decision. ........................... 11

    C.    McAfee Will Suffer No Hardship if the Case Is Not Considered Now, but Both WilmerHale and Goyal Will Suffer Hardship if this Case Proceeds. ................... 13

II.    McAfee Must Comply with the Forum Selection Clause. ........................... 13

    A.    McAfee's Claims Fall Within the Forum Selection Clause .................. 14

    B.    WilmerHale Is Entitled To Enforce the Forum Selection Clause .......... 15

III.    Goyal Is an Indispensable Party Who Cannot Be Joined. ........................... 16

    A.    Goyal Is a Person Who Is Required To Be Joined if Feasible .............. 16

    B.    Because Goyal Cannot Be Joined and He Would Be Prejudiced if This Action Proceeded in His Absence, the Action Should Be Dismissed. .............................. 18

IV.    McAfee's Claims Violate Rule 9(b) and Otherwise Fail To State a Claim ...... 20

    A.    McAfee's Fraud Claims Are Far Too Vague To Comply with Rule 9(b). ........... 20

    B.    McAfee's Other Claims Should Be Dismissed Under Rule 12(b)(6) .......... 22

        1.    McAfee's Claims of Negligence, Gross Negligence and Breach of Fiduciary Duty Must Be Dismissed. ........................................................ 23

2.      McAfee's Claim of Assumpsit Must Be Dismissed. ..................................24

Conclusion and Prayer .................................................................................................................28

**Table of Authorities**

**FEDERAL CASES**

*A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*,
559 F.2d 928 (4th Cir. 1977) ...............................................12

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967).................................................11, 13

*Aerus LLC v. Pro Team, Inc.*,
2005 WL 1131093 (N.D. Tex. 2005)...............................14

*Altava Health Mktg., Ltd. v. Shortgrass, Inc.*,
2005 WL 2277598 (S.D. Tex. 2005) ...............................17

*Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co.*,
2005 WL 1862631 (W.D. Tex. 2005)...........................15, 16

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ...........................................3

*Armstrong World Indus. v. Adams*,
961 F.2d 405 (3d Cir. 1992).............................................3

*Assetworks, Inc. v. City of Cincinnati*,
2003 WL 25463096 (W.D. Tex. 2003).................................3

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007)...................................................22

*Brock v. Entre Computer Ctrs., Inc.*,
740 F. Supp. 428 (E.D. Tex. 1990).................................15

*Bry-Man's, Inc. v. Stute*,
312 F.2d 585 (5th Cir. 1963) .........................................19

*Coghlan v. Wellcraft Marine Corp.*,
240 F.3d 449 (5th Cir. 2001) .........................................25

*Delcon Constr. Corp. v. HUD*,
205 F.R.D. 145 (S.D.N.Y. 2002) ...................................17

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*,
2008 WL 744823 (S.D. Tex. 2008) ...............................19

*Evergreen Int'l Aviation, Inc. v. Banc of Am. Secs., LLC,*
2004 WL 1717627 (D. Or. 2004) ......................................................19

*First Nat'l Bank of Durant v. Trans Terra Corp. Int'l,*
142 F.3d 802 (5th Cir. 1998) ..........................................................23

*First Specialty Ins. Corp. v. Admiral Ins. Co.,*
2007 WL 1876516 (D. Or. 2007) ......................................................15

*Frith v. Guardian Life Ins. Co. of Am.,*
9 F. Supp. 2d 734 (S.D. Tex. 1998) ..................................................21

*Fulbright & Jaworski, L.L.P. v. Mariner Health Care, Inc.,*
2006 WL 4007923 (W.D. Tex. 2006) ............................................22, 27

*GMAC Commercial Mortg. Corp. v. East Tex. Holdings, Inc.,*
441 F. Supp. 2d 801 (E.D. Tex. 2006) ..............................................21

*Global Dis. Travel Servs., LLC v. TWA,*
960 F. Supp. 701 (S.D.N.Y. 1997) ....................................................17

*Goldstein v. MCI WorldCom,*
340 F.3d 238 (5th Cir. 2000) ..........................................................21

*HS Res., Inc. v. Wingate,*
327 F.3d 432 (5th Cir. 2003) ..........................................................19

*Harrell & Sumner Constr. Co. v. Peabody Petersen Co.,*
546 F.2d 1227 (5th Cir. 1977) ........................................................19

*Hart v. Bayer Corp.,*
199 F.3d 239 (5th Cir. 2000) ..........................................................20

*Ingalls v. Edgewater Private Equity Fund III, L.P.,*
2005 WL 2647962 (S.D. Tex. 2005) ..................................................24

*Jenkins v. Renau,*
697 F.2d 160 (6th Cir. 1983) ..........................................................19

*Lambert v. Kysar,*
983 F.2d 1110 (1st Cir. 1993) ........................................................15

*McIntosh v. Wiley,*
2006 U.S. Dist. LEXIS 89589 (S.D. Tex. 2006) ..................................26

*McNair v. City of Cedar Park*,
993 F.2d 1217 (5th Cir. 1993) ........................................................24

*McNair v. Monsanto Co.*,
279 F. Supp. 2d 1290 (M.D. Ga. 2003) ..........................................15

*Nat'l Treas. Empl. Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996) ......................................................11

*Nextrade, Inc. v. Hyosung (Am.), Inc.*,
2005 WL 348400 (9th Cir. 2005) ....................................................15

*Oden v. Vanguard Car Rental USA, Inc.*,
2008 WL 901325 (E.D. Tex. 2008) ..................................................25

*Roark & Hardee LP v. City of Austin*,
522 F.3d 533 (5th Cir. 2008) ..........................................................10

*Sample v. Morrison*,
406 F.3d 310 (5th Cir. 2005) ............................................................3

*Scott v. Pfizer, Inc.*,
2008 WL 508641 (E.D. Tex. 2008) ..................................................20

*Sever v. Glickman*,
298 F. Supp. 2d 267 (D. Conn. 2004) ..............................................17

*Siemens Bldg. Techs., Inc. v. Grot, Inc.*,
2005 WL 2012263 (E.D. Tex. 2005) ................................................21

*Stewart Org., Inc. v. Ricoh Corp.*,
779 F.2d 643 (11th Cir. 1986) ........................................................15

*Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.*,
21 F. Supp. 2d 664 (E.D. Tex. 1998) ..............................................26

*Texas Source Group, Inc. v. CCH, Inc.*,
967 F. Supp. 234 (S.D. Tex. 1997) ..................................................15

*United States v. Carmichael*,
343 F.3d 756 (5th Cir. 2003) ....................................................11, 12

*United States v. Williams*,
2008 WL 783555 (E.D. Tex. 2008) ..................................................22

*United Transp. Union v. Foster,*
205 F.3d 851 (5th Cir. 2000) ................................................................10, 11, 12

*Valley v. Rapides Parish Sch. Bd.*,
145 F.3d 329 (5th Cir. 1998) ...............................................................................11

*Williams v. WMX Techs.*,
112 F.3d 175 (5th Cir. 1997) ...............................................................................21

## STATE CASES

*Accelerated Christian Educ'n, Inc. v. Oracle Corp.*,
925 S.W.2d 66 (Tex. App.--Dallas 1996, no writ) ................................................15

*BMG Direct Mktg., Inc. v. Peake*,
178 S.W.3d 763 (Tex. 2005)......................................................................25, 26, 27

*Barcelo v. Elliott*,
923 S.W.2d 575 (Tex. 1996).................................................................................23

*Barnette v. United Res. Co.*,
823 S.W.2d 368 (Tex. App.--Dallas 1991, writ denied)........................................15

*Barrett v. Ferrell*,
550 S.W.2d 138 (Tex. App.--Tyler 1977, writ ref'd n.r.e.) ...................................27

*Deutsch v. Hoover, Bax & Slovacek*,
97 S.W.3d 179 (Tex. App.--Houston [14th Dist.] 2002, no pet.) ...........................24

*Edwards v. Mid-Continent Office Distributors, L.P.*,
252 S.W.3d 833 (Tex. App.--Dallas 2008, pet. pending) .......................................27

*Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*,
246 S.W.3d 42 (Tex. 2008)....................................................................................25

*Homestore, Inc. v. Tafeen*,
888 A.2d 204 (Del. 2005) .....................................................................................12

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
991 S.W.2d 787 (Tex. 1999)..................................................................................23

*Musick v. Pogue*,
330 S.W.2d 696 (Tex. App.--San Antonio 1959, writ ref'd n.r.e.) .........................25

*Roberts v. Healey*,
991 S.W.2d 873 (Tex. App.--Houston [14th Dist.] 1999, pet. denied)....................23

*Safeway Managing Gen. Agency, Inc. v. Clark & Gamble,*
    985 S.W.2d 166 (Tex. App.--San Antonio 1998, no pet.) ........................................24

*Sanders v. Republic Nat'l Bank,*
    389 S.W.2d 551 (Tex. App.--Tyler 1965, no pet.)..................................................26

*Scherrer v. Haynes & Boone, LLP,*
    2002 WL 188825 (Tex. App.--Houston [1st Dist.] 2002, no pet.) .........................24

*Skadden, Arps, Slate, Meagher & Flom LLP v. Angulo,*
    2003 WL 25668876 (N.Y. Sup. Ct. 2003) .............................................................27

*Swank v. Cunningham,*
    2008 WL 796982 (Tex. App.--Eastland 2008, no pet.) .........................................24

*Thigpen v. Locke,*
    363 S.W.2d 247 (Tex. 1962)...................................................................................15

*Thompson v. Vinson & Elkins,*
    859 S.W.2d 617 (Tex. App.--Houston [1st Dist.] 1993, writ denied) ...................23

## STATUTES

Fed. R. Civ. P. 12(b)(1), (3), (6), (7).........................................................................1, 29

Fed. R. Civ. P. 19 ..........................................................................................17, 18, 19, 20

## OTHER AUTHORITIES

1 A. Corbin, *Corbin on Contracts* § 1.18 ........................................................................7

M. O'Connor, *O'Connor's Texas Causes of Action*, 5-F § 2.2 (2008)............................7

Pursuant to Fed. R. Civ. P. 12(b)(1), (3), (6), (7), and 9(b), Defendant Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") moves to dismiss Plaintiff McAfee, Inc.'s Third Amended Complaint. WilmerHale requests an oral hearing on this Motion.[1]

## Summary of Motion

This lawsuit was brought at the wrong time and in the wrong forum, by a plaintiff who seeks to prejudice the interests of an absent party. McAfee's three efforts to recast its Complaint have not cured the fundamental defects at the heart of this action.

Plaintiff McAfee and Defendant WilmerHale came into contact not by happenstance, but because of a contract. The case arises out of a 1996 Indemnity Agreement in which McAfee, a Delaware corporation, promised to advance the legal defense costs for claims against its CFO, Prabhat Goyal, in the event that he faced litigation arising from his employment. The advances would be subject to recoupment if Goyal were later found not entitled to indemnification. McAfee agreed in the Indemnity Agreement that any disputes arising from it must be litigated in Delaware. Goyal was subsequently the subject of a still-ongoing, five-year investigation and prosecution, in which he was represented by WilmerHale. Just two months ago, McAfee conceded in Delaware Chancery Court that the Indemnity Agreement requires it to continue to advance funds for Goyal's sentencing and appeal, and that any claim by McAfee to recover fees advanced for Goyal must be deferred until a recoupment proceeding in Delaware *after* the criminal case is concluded. McAfee takes a decidedly different position here.

---

[1]    McAfee filed two complaints in Collin County district court on April 8 and 9, 2008. WilmerHale timely removed to this Court. On May 7, 2008, McAfee filed its Second Amended Complaint. Weeks after WilmerHale moved to dismiss the Second Amended Complaint, McAfee reconfigured its lawsuit a third time, with this Court granting leave to file the Third Amended Complaint on July 1. On July 14, WilmerHale withdrew its initial motion to dismiss, in order to focus the proceedings on plaintiff's operative pleading.

After paying WilmerHale invoices from 2002 to 2007, McAfee launched this unprecedented attack on its indemnitee's lawyers. Notwithstanding McAfee's admission in Delaware that challenges to the reasonableness of the fees advanced on behalf of Goyal to WilmerHale must be deferred until after the criminal case is concluded and Goyal's entitlement to *any* indemnification is settled, McAfee here seeks to attack WilmerHale's fees in the middle of Goyal's sentencing and appeal. Notwithstanding McAfee's contractual commitment to litigate all matters arising out of the Indemnity Agreement in Delaware, where Goyal and McAfee are both before the Chancery Court, McAfee asks this Court to hear this case. And notwithstanding that McAfee's lawsuit would call upon WilmerHale to disclose the details of its services to its client in the middle of his criminal case, McAfee insists on proceeding now, in Goyal's absence.

What is before the Court now are two sets of allegations: claims that Goyal's defense fees were unreasonably high, which claims are unripe as between McAfee and WilmerHale and may be pursued only in Delaware; and claims for fraud and theft by deception, which are also unripe and, despite McAfee's three amendments, remain insufficient on their face.

Accordingly, WilmerHale seeks dismissal of this lawsuit based on the following four independent and sufficient grounds:

- First, the Court lacks subject-matter jurisdiction because there is no ripe, justiciable dispute between these parties. McAfee's statements in Delaware confirm that, under Delaware law and the Indemnity Agreement, any dispute about the return of any fees advanced should be deferred until after the criminal prosecution is completed, at which time Goyal may be obliged to return *all* of the fees advanced. Accordingly, the case should be dismissed under Rule 12(b)(1).

- Second, even if this matter were ripe, it could be heard only in the Delaware state courts, because McAfee has so agreed in the Indemnity Agreement. Accordingly, the case should be dismissed under Rule 12(b)(3).

- Third, the Complaint fails to join an indispensable party -- Goyal -- who cannot be joined here, but who is already a party with McAfee in a pending dispute over the same matters in Delaware. Accordingly, the case should be dismissed under Rule 12(b)(7).

- Fourth, in addition to these deficiencies, the Complaint suffers from substantive defects. The fraud and theft allegations do not even approach the standard of Rule 9(b). With respect to the negligence, gross negligence, and fiduciary breach claims, McAfee is owed no duty by WilmerHale and has failed to state a claim. With respect to the assumpsit or quasi-contract cause of action, McAfee has failed to state a claim due to the existence of an express contract -- the Indemnity Agreement -- covering the subject matter, and because this claim is barred by the voluntary payment rule. These claims should be dismissed under Rule 12(b)(6).

Because this Motion raises issues under Rules 12(b)(1) and (3), defendant WilmerHale has supplied the Court with contracts, pleadings and transcripts that confirm that this case should not proceed in this Court.[2]

### Preliminary Statement

**A.      The 1996 Indemnity Agreement**

The Indemnity Agreement ("Agreement") (Exh. 1) drafted by McAfee is unambiguous in its purpose: "competent and experienced persons are increasingly reluctant to serve as . . . officers . . . of corporations unless they are protected by . . . indemnification," in part because the "costs of litigation may be so enormous . . . that the defense . . . of such litigation is

---

[2]    A challenge to ripeness is governed by Rule 12(b)(1), because it is an "essential component" of federal subject matter jurisdiction. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). In deciding a motion challenging ripeness, the court may consider facts outside the complaint. *See Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 n.10 (3d Cir. 1992) (in considering motion to dismiss for lack of ripeness, district court "may inquire, by affidavits or otherwise, into the facts as they exist"). If subject-matter jurisdiction is found to exist, WilmerHale moves this Court to enforce the forum-selection clause in the Indemnity Agreement pursuant to Rule 12(b)(3). In enforcing a forum clause, a court may consider materials outside the four corners of the complaint. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *Assetworks, Inc. v. City of Cincinnati*, 2003 WL 25463096, at *11 (W.D. Tex. 2003). WilmerHale relies on the materials submitted with and facts recited in this Motion pursuant to Rules 12(b)(1) and (3), and relies only on the content of McAfee's pleadings for its Motion under Rules 9(b) and 12(b)(6) and (7).

often beyond the personal resources of . . . officers." Exh. 1 ¶¶ A, C. Because of the "unfair[ness]" of subjecting officers to the "huge . . . expenses" that may be incurred, McAfee's Board decided that the company must indemnify its officers to "retain and attract" the type of "talented and experienced" persons who are capable of taking "the business risks necessary for [McAfee's] success." *Id.* ¶¶ D, F. After recognizing the indemnification provisions of Delaware law, McAfee agreed "to assume for itself maximum liability for expenses . . . in connection with claims against such . . . officers in connection with their services to the Company." *Id.* ¶¶ F, G.

The Agreement recognized that Goyal's right to indemnification may depend upon the resolution of the claims against him and the extent to which he performed his duties in good faith, and that Goyal's ultimate entitlement to indemnification might not be known until the end of protracted proceedings. *Id.* ¶ 4. Thus, in a section entitled "Mandatory Advancement of Expenses," McAfee committed that it "*shall advance all expenses* . . . in connection with . . . any proceeding to which the Indemnitee is a party . . . by reason of the fact that the Indemnitee is or was an agent of the Company." *Id.* ¶ 6 (all emph. in quotations is added). Goyal was obliged to repay amounts that are "*determined ultimately*" not to be subject to indemnification. *Id.*

The Agreement is to be "enforced so as to provide indemnification to [Goyal] to the fullest extent permitted by law including those circumstances in which indemnification would otherwise be discretionary" and is "governed exclusively by" Delaware law. *Id.* ¶¶ 14, 18. "Any action instituted under this Agreement shall be brought only in the state courts of the State of Delaware," whose jurisdiction both parties "irrevocably consented to," for "all purposes in connection with any action . . . which arises out of or relates to this Agreement." *Id.* ¶ 19.

**B.      McAfee Complies With Its Advancement Obligation for Five Years.**

In 2002, the Department of Justice launched a sweeping investigation into McAfee's accounting practices over a three-year period. On the recommendation of McAfee's

counsel, Goyal hired WilmerHale, and McAfee began advancing fees. Exh. 2 ¶¶ 1, 20 (Complaint, *Goyal v. McAfee*, Del. Ch. Ct.). The accounting case was complex, and involved the production and review of 1.2 million documents. *Id.* ¶ 24. Trial preparation costs increased when the court continued the trial shortly before the long-scheduled July 10, 2006 trial date, requiring WilmerHale to ramp up a second time toward the end of 2006. *Id.* Goyal was convicted. Dkt. #19, Third Amended Complaint ("Third Am. Compl."), ¶ 6.

Goyal's defense costs for the civil and criminal proceedings arising out of the accounting investigation have exceeded $12 million. *Id.*[3] Pursuant to a procedure established by McAfee, WilmerHale presented monthly invoices to Goyal for review and confirmation of reasonableness, and the invoices were then forwarded to McAfee for its own review and payment. Exh. 2 ¶¶ 22-23. Until October 2007, McAfee raised any questions it had about invoices, which were resolved by WilmerHale. *Id.* ¶ 23.

**C.    McAfee Reduces Corporate G&A in October 2007.**

In October 2007, with the criminal case entering the sentencing phase, McAfee stopped paying invoices. *Id.* ¶¶ 2, 27. McAfee offered WilmerHale shifting explanations, from new billing guidelines to new payment software to review by a new attorney. *Id.* ¶¶ 27-31. McAfee's refusal to pay came on the heels of public statements it had made blaming increased corporate general and administrative expenses on "legal costs associated with indemnification

---

[3]    Other accounting prosecutions have also led to substantial indemnification expenses. *See* Gregory Reyes, former CEO of Brocade ($46.7 million), *United States v. Reyes,* No. 06-556 (N.D. Cal. 2008), (Letter of John C. Dwyer, filed January 10, 2008); Sanjay Kumar, former CEO of Computer Associates ($14.9 million, without a trial), *United States v. Stein,* No. 05-888 (S.D.N.Y. 2005) (Opinion of July 16, 2007).

agreements to former officers." Exh. 3 (Transcript of Analyst Meeting) (6/12/07) at 23, 48.[4]  On

April 8, 2008, McAfee counsel went to WilmerHale's Boston offices, revealed that McAfee had

sued the firm in Collin County, Texas early that morning and demanded that WilmerHale agree

immediately to pay $6.8 million or face a petition with more aggressive charges.  McAfee filed

its First Amended Petition in Collin County the next day.  Dkt. #1.

McAfee has filed two more complaints.  Most things have not changed.  The

gravamen of the complaints is that WilmerHale's fees were too high.  *Compare* Second Am.

Compl. ¶ 29 (Dkt. #2) ("unreasonable") *with* Third Am. Compl. ¶¶ 7-10 (Dkt. #19) (attacking

number of timekeepers and cost of the representation).  The causes of action for negligence,

fiduciary breach, and even "fraud" rest on the underlying claim of too many timekeepers and

unreasonable billings -- not a single false statement is identified in any of the four pleadings.

Instead, this suit rests on an alleged "audit" performed by an entity known as Legal Cost Control,

Inc. ("LCCI"), Second Am. Compl. ¶ 41 ("legal audit firm"); Third Am. Compl. ¶ 21, which was

based on the facts reported in WilmerHale bills (the number of timekeepers and amounts billed).[5]

McAfee's most recent amendment reveals not any new facts, but rather a

concerted effort to avoid the legal effect of the admitted facts.  In its earlier filings, McAfee

---

[4]   McAfee's change of direction was not limited to WilmerHale and Goyal.  In October 2007, the same
month that it stopped paying WilmerHale's bills, McAfee also stopped paying the bills of another
law firm for legal services provided to another former McAfee officer facing a criminal indictment,
its former General Counsel Kent Roberts.  Roberts, like Goyal, was then forced to file an action in
Delaware to compel McAfee to meet its advancement and indemnification obligations.  Complaint,
*Roberts v. McAfee* (Del. Ch. Ct) (Exh. 4) ¶¶ 13-14.

[5]   LCCI has been rejected by at least four courts as an "expert" in determining the reasonableness of
legal fees.  *See, e.g., Samuel-Bassett v. Kia Motors Am.,* No. 2199 (Phil. Co. Ct. of Common Pleas
2007) (LCCI "testimony fails on every standard of evaluation" and "was totally lacking in candor,
without any credibility, and is rejected"); *Takeda Chem. Indus., Ltd. v. Mylan Labs.,* 2007 WL
840368, at *5-7 (S.D.N.Y. Mar. 21, 2007) (affording LCCI's testimony "no weight" because of its
arbitrary attack on number of timekeepers, lack of experience with complex litigation, and failure to
identify or apply any standards for its "audit").

expressly rested its standing on the payments made pursuant to the Indemnity Agreement, which "subrogated" McAfee to Goyal's rights to challenge his lawyers' fees.  First Am. Pet. ¶¶ 7, 11-12 (Dkt. #1); Second Am. Compl. ¶¶ 26 (Dkt. #2) (McAfee paid "pursuant to an Indemnity Agreement"), 34-35 (it "stands in Goyal's shoes").  On June 9, WilmerHale moved to dismiss the Second Amended Complaint, demonstrating that McAfee cannot stand in Goyal's shoes because the payments under the Agreement are only advances and Goyal's right to indemnification has yet to be determined; and that even if this case were ripe (it is not), the Agreement requires that McAfee proceed in Delaware.  In the face of that motion, McAfee has now expunged all references to the Agreement, as if to suggest that it paid Goyal's fees not because of a contract but simply because it seemed like the right thing to do; and, it deleted all references to subrogation and instead relies on the "legal dinosaur" of assumpsit, 1 A. Corbin, *Corbin on Contracts* § 1.18, at 51 (1993), as if to suggest that WilmerHale stumbled upon some funds that McAfee paid by mistake.  *See* M. O'Connor, *O'Connor's Texas Causes of Action*, 5-F § 2.2, at 117 (2008) (assumpsit or "money had and received" is a quasi-contractual vehicle for, *inter alia*, recovering money paid by mistake).

### D.     McAfee Does Another About-Face, at Least in Delaware.

McAfee's machinations have not escaped the attention of the individual whose liberty is at stake.  On May 2, Goyal -- who was not named as a party by McAfee in any of its complaints in Texas -- sued McAfee in Delaware, seeking declaratory relief that, under the Agreement, he is entitled to continued advancement of his defense costs during his sentencing, appeal and retrial, and that any adjudication of the reasonableness of fees incurred pursuant to the Agreement must proceed, as the parties agreed, before the state courts in Delaware.  Exh. 2.

On May 9, McAfee appeared at a scheduling conference in Chancery Court in Delaware.  In the face of Goyal's demand that McAfee honor its advancement obligation and

litigate its challenge to the reasonableness of fees advanced under the Agreement in the forum agreed upon by the parties, McAfee reversed course -- at least in Delaware.

In response to Goyal's contention that a reasonableness challenge, if it is to be mounted, should be heard now in Delaware, McAfee announced that any dispute about reasonableness of past or future advancements should be "*defer[red] . . . until a final indemnification proceeding*." Exh. 5 (Tr.) at 8. McAfee insisted that the status of its "ultimate" indemnification responsibilities is yet to be decided. In fact, it asserted its intention to seek recovery from Goyal of all advances, reasonable or not, if he does not prevail on appeal. *Id.* at 6, 15. And even if Goyal wins his appeal, McAfee insisted that it was reserving its right to challeng*e* "reasonableness" later, in Delaware, in a "final indemnification proceeding." *Id.* at 6, 8. In this Court, McAfee has conceded that a challenge to the reasonableness of the bills for Goyal's defense is contingent upon, among other things, the outcome of the proceedings against him. McAfee represented here just last week that, "under the Indemnity Agreement, Goyal is entitled to indemnity for the fees and expenses reasonably incurred by him in connection with his successful defense. Those issues are not yet ripe because the issue of whether Goyal's expenses are reasonable only arises if Goyal's defense is *unsuccessful*." Plaintiff's Supp. Resp. to Defendant's Motion to Dismiss (July 7, 2008) (Dkt. #32), at 4 (orig. emph.).

McAfee also assured the Delaware court that its suit in Texas has nothing to do with the reasonableness of Goyal's defense costs ("not . . . that the law firm . . . should have billed $8 million and they billed $12 million") and instead rests on "actual fraud, that there were some people who billed things who didn't work on the case." Exh. 5 at 14-15. But this Court will find that the Third Amended Complaint, like its predecessors, fails to identify a single fraudulent statement by WilmerHale. It maintains that WilmerHale billed an unreasonable sum

for its services.  In Delaware, McAfee insists that the issue of reasonableness should be deferred until Goyal's entitlement to any indemnification is decided, but here it seeks to litigate the very issue that it has conceded is not ripe.  In Delaware, McAfee acknowledges the jurisdiction of the Delaware courts and the availability of a remedy in the Chancery Court to recover all or some of its advances, depending upon the outcome of the criminal proceedings, but here it insists upon the right to proceed now, against Goyal's attorneys and in his absence, to adjudicate issues that are by its own admission not ripe for adjudication, based on charges of "fraud" and "theft" that, after four attempts, McAfee still cannot plead with any particularity.

The truth does not change across state lines.  This lawsuit should not have been brought now, against this defendant; and, it does not belong here, when the Agreement specifies Delaware state court as the exclusive forum, where Goyal and McAfee are already parties.  The "fraud" and "theft" claims are pure makeweight.  This case should be dismissed now.

## Argument and Authorities

### I.     McAfee's Claims Are Not Ripe.

McAfee's claims simply are not ripe.  McAfee's own statements show that its challenge to the reasonableness of WilmerHale's fees and expenses is entirely premature:  if Goyal's conviction is affirmed, McAfee will seek *all* the money advanced for Goyal, without regard to whether the fees were reasonable and without regard to fraud; if Goyal is vindicated, McAfee admits it will have no right to recoup *any* fees from Goyal.  As McAfee recognized in its statements in Delaware and to this Court, whether McAfee will have any right or need to challenge WilmerHale's bills is contingent on future events.

McAfee's statements to the Delaware court were unequivocal:

- "[Goyal] has already been convicted, but he could lose his appeal, in which case he has to pay all those fees back, and it doesn't matter if they

are reasonable or unreasonable. The Court will never have to decide that issue. They will have to be repaid." Exh. 5 at 6.

- "If . . . his conviction is affirmed, we are going to seek recoupment of every dollar that we paid him, and it *doesn't really matter whether the charges were reasonable or not*." *Id.* at 15.

Here, McAfee admits that the issue of whether Goyal's expenses are reasonable "only arises if Goyal's defense is *unsuccessful*," Dkt. #32 at 4 (orig. emph.), meaning, if he is vindicated on appeal, then McAfee cannot recoup *anything* from him, reasonable or not. Plaintiff's Supp. Resp. to Motion to Dismiss. Taken together, these statements demonstrate why this case is not ripe: if Goyal loses his appeal, then McAfee intends to recover "*all those fees back*," regardless of whether McAfee considered the fees reasonable or legitimate; if Goyal wins the appeal, McAfee apparently concedes that it has no claim to recover *any* of the fees. Either way, the outcome of the appeal, by McAfee's admission, will have a profound effect on whether it suffers any loss, regardless of whether McAfee agrees with how Goyal was defended.[6]

If, as McAfee insists, the Delaware court need not concern itself now with whether Goyal's fees were reasonable because he may have to repay all of McAfee's advances, then surely there is no ripe case before this Court.

A.      **Claims Are Not Ripe if They Are Contingent Upon Uncertain Future Events.**

Federal courts apply established "justiciability doctrines," including ripeness, to determine if a case belongs in court. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th

---

[6]    In Delaware, McAfee had asserted a right to recoupment of any "unreasonable" fees from Goyal even if he were acquitted, but that calculation would await a "final indemnification" proceeding after the criminal case is completed. Exh. 5 at 8. In any event, assuming the existence of such a right, that would not support a claim against WilmerHale now. *If* the outcome of the criminal case justified McAfee pursuing a recovery from its indemnitee; and *if* the indemnitee could not satisfy any resulting obligations to McAfee; and, *if* McAfee entered an agreement to subrogate to any of Goyal's rights to challenge the reasonableness of his lawyers' fees; *then* McAfee may be positioned to pursue such claims against WilmerHale, in Delaware (where WilmerHale does not object to jurisdiction). None of those things has happened.

Cir. 2000).  *See Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008).

"Prudentially, the ripeness doctrine exists to prevent the courts from wasting our resources by

prematurely entangling ourselves in abstract disagreements. . . ."  *Nat'l Treas. Empl. Union v.

United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).  "These prudential concerns ensure that

changing hypothetical circumstances or lack of party interest does not make resolution of the

legal issues unnecessary."  *Valley v. Rapides Parish Sch. Bd.*, 145 F.3d 329, 332 (5th Cir. 1998).

The goal is to keep out of court matters that are premature because the alleged injury may never

occur.  *See Foster*, 205 F.3d at 857.

   The ripeness doctrine assesses both "the fitness of the issues for judicial decision"

and "the hardship to the parties of withholding court consideration."  *Abbott Labs. v. Gardner*,

387 U.S. 136, 149 (1967).  A claim is not fit for review if "it rests upon contingent future events

that may not occur as anticipated, or indeed may not occur at all."  *United States v. Carmichael*,

343 F.3d 756, 761 (5th Cir. 2003) (quotation marks omitted).

  **B.**  **McAfee's Claims Are Not Fit for Judicial Decision.**

   McAfee's case rests on allegations that the fees it advanced to WilmerHale on

behalf of Goyal are unreasonable because they resulted from overstaffing or otherwise were

excessive.  But McAfee has asserted that it will recover "*all those fees*" from Goyal if his

conviction is affirmed, and it has disclaimed any right to recover *any* of the fees if his conviction

is reversed.  Accordingly, its claims are not fit for judicial decision because they are entirely

contingent upon alleged injury to McAfee that may never be realized.

   In Delaware, McAfee has claimed that it has made advances without prejudice to

its right to contest reasonableness and the amount of the indemnification owed to Goyal, in an

ultimate "indemnification proceeding" in Delaware.  Exh. 5 at 8.  That is the procedure

contemplated by the Agreement, which provides for a "mandatory duty to advance," subject to

recoupment by the indemnitor in an "ultimate" proceeding. Exh. 1 ¶ 6. Whether or not McAfee avails itself of its contractual rights, its claims in Texas are entirely contingent and unripe.

Regardless of whether McAfee's standing here rests on express subrogation, equitable subrogation, or quasi-contract, the disposition of the money at issue in this suit does not change. If Goyal's conviction is affirmed on appeal, he may be obligated under the Indemnity Agreement to repay McAfee all the money that it advanced to WilmerHale on his behalf, whether reasonable or not, or fraudulent or not.[7] Even if Goyal is vindicated on appeal, McAfee has at best preserved its right to challenge the "reasonableness" of his fees in a final "indemnification" proceeding in Delaware. Exh. 5 at 6, 8. If he repays McAfee in whole or in part, it will have recouped what it paid to WilmerHale -- including the allegedly "unreasonable" and "fraudulent" fees that it claims as injury. This case is not ripe because whether McAfee has a claim to recover any of the fees paid will turn in part upon future events. *See Foster*, 205 F.3d at 857 (case is not ripe if injury is speculative and may never occur); *Carmichael*, 343 F.3d at 761 (case not ripe if contingent upon future events).[8]

---

[7]    *See* Exh. 1 ¶ 6; *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212-13 (Del. 2005) (Delaware law "expressly contemplates that corporations may confer a right to advancement that is greater than the right to indemnification and recognizes that *advances must be repaid if it is ultimately determined that the corporate official[s] [are] not entitled to be indemnified*").

[8]    *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Corp.*, 559 F.2d 928 (4th Cir. 1977), is instructive. There, a shipowner, a pier operator, and a pier designer/builder disputed who was responsible for a deadly accident on the pier. After the pier operator was found primarily liable, the designer/builder and shipowner sought indemnification from the pier operator for expenses incurred in defending a separate wrongful death action brought by the families of the victims. The court concluded that the indemnification suit was not ripe because the legal liability of the indemnitee had not yet been established. "The fact that [the shipowner and designer/builder had] already incurred some expenses in defending those actions does not make ripe their claims for indemnification." *Id.* at 932. No one could "tell . . . what the outcome of those actions will be," and any award of "indemnification against all liability and expenses, incurred or which may be incurred . . . in those actions, could lead to incongruous results." *Id.* For similar reasons, McAfee's claims are premature.

**C. McAfee Will Suffer No Hardship if the Case Is Not Considered Now, but Both WilmerHale and Goyal Will Suffer Hardship if this Case Proceeds.**

In determining ripeness, courts also consider "the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. In this case, there would be no hardship to McAfee if its claims were dismissed pending resolution of the indemnification issues with Goyal. McAfee paid his fees for five years. It filed this lawsuit before ever identifying or discussing its purported concerns about the fees with either him or WilmerHale. When asked to set a hearing on reasonableness in Delaware, McAfee avoided the hearing by arguing that the issue should be deferred until after Goyal's fate is settled, and the ultimate indemnification issues can be addressed. Exh. 5 at 8. Those issues would then be resolved in the very forum chosen by McAfee, pursuant to a procedure that it has agreed to by contract and in Chancery Court.

Regardless of whether McAfee's payments of WilmerHale invoices were made pursuant to a contract duty (Original, First, and Second Amended Complaints) or for some other reason that McAfee declines to mention (Third Amended Complaint), McAfee has insisted that all of its payments were provisional and subject to recoupment depending on further proceedings in Goyal's criminal case and in Delaware. Its claims here should be dismissed pending resolution of the "ultimate" issues of indemnification, in Delaware Chancery Court.

**II. McAfee Must Comply with the Forum Selection Clause.**

This action should also be dismissed under Rule 12(b)(3) because McAfee sued in the wrong forum. The Indemnity Agreement contains a forum selection clause mandating that disputes under the Agreement be brought in Delaware state court:

> The Company and the Indemnitee each hereby irrevocably consent to the jurisdiction of the courts of the State of Delaware *for all purposes in connection with any action or proceeding which arises out of or relates to this Agreement and agree that any action instituted under this Agreement shall be brought only in the state courts of Delaware.*

Exh. 1 ¶ 19.  Regardless of how McAfee styles its claims, because its complaints and alleged damages arise from the Agreement, the suit falls within the forum selection clause.  WilmerHale is not a signatory to the Indemnity Agreement, but a non-signatory can enforce a forum selection clause in the circumstances present here.

**A.     McAfee's Claims Fall Within the Forum Selection Clause.**

A Texas federal court interpreting a similar forum selection clause, which applied to claims "assert[ed] under" the contract, has explained that all "claims that arise out of the contractual relationship and implicate the agreement are subject to the forum selection clause." *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *7 (N.D. Tex. 2005).  Here, all of McAfee's payments arise out of its relationship with Goyal and implicate the Agreement, and all of its claims to recover those payments fall within the forum selection clause.

All of McAfee's claims against WilmerHale depend upon the allegation that WilmerHale induced McAfee to advance expenses to Goyal that were "unreasonable."  Third Am. Compl. ¶ 9.  Reasonableness is an issue that the Agreement speaks to directly, as it requires indemnification for "reasonable" fees.  *See* Exh. 1 ¶ 1(b) ("For purposes of this Agreement, 'expenses' include all direct and indirect costs of any type or nature whatsoever (including, without limitation, all attorneys' fees and related disbursements . . .) actually and *reasonably incurred* by the Indemnitee . . . .").  McAfee's claim to recoup fees paid, under any of the various theories asserted in its Third Amended Complaint, whether negligence, fiduciary breach, or assumpsit, necessarily implicates rights and duties created by the Agreement with Goyal.

The forum selection clause applies to McAfee's claims notwithstanding that it has characterized some of its claims as sounding in tort rather than as breach of contract.  "There is no basis for finding that where parties contract a choice of forum the agreement governs only disputes directly under the contract. . . .   [Such clauses reach] . . . claims pendent to or arising

out of the contractual relationship. . . ." *Stewart Org., Inc. v. Ricoh Corp.*, 779 F.2d 643, 650 (11th Cir. 1986), *adhered to*, 810 F.2d 1066 (11th Cir. 1987) (en banc), *aff'd and remanded on other grounds*, 487 U.S. 22 (1988).[9]

**B.** **WilmerHale Is Entitled To Enforce the Forum Selection Clause.**

WilmerHale is entitled to enforce the forum selection clause for two reasons. First, the firm is a "transaction participant" with respect to the Agreement containing the clause. Courts regularly hold that "transaction participants" may benefit from and be subject to forum selection clauses, even if they are not signatories to the agreement at issue.[10] *See Accelerated Christian Educ'n, Inc. v. Oracle Corp.*, 925 S.W.2d 66, 75 (Tex. App.--Dallas 1996, no writ), *abrogated on other grounds by In re AIU Ins. Co.*, 148 S.W.3d 109, 116, 121 (Tex. 2004); *see also First Specialty Ins. Corp. v. Admiral Ins. Co.*, 2007 WL 1876516, at *3 (D. Or. 2007) (holding that insurers were both "transaction participants" to a subcontracting agreement entered into by their insureds, even though the insurers were not signatories); *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1306-07 (M.D. Ga. 2003) (vendor's business relationship with a signatory of the contract made it foreseeable that it would be bound by the contract and its forum selection

---

[9]  *Accord Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) (contract-related tort claims involving same facts as contract claim covered by forum selection clause); *Nextrade, Inc. v. Hyosung (Am.), Inc.*, 2005 WL 348400, at *2 (9th Cir. 2005) (where non-contract claims directly related to interpretation of an agreement, forum selection clause applies); *see Barnette v. United Res. Co.*, 823 S.W.2d 368, 370 (Tex. App.--Dallas 1991, writ denied) ("Pleading alternate non-contractual theories is not alone enough to avoid forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." (quotation marks omitted)).

[10]  *See Brock v. Entre Computer Ctrs., Inc.*, 740 F. Supp. 428, 430-31 (E.D. Tex. 1990); *Texas Source Group, Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997) ("Courts have ruled that a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses.") (quotation marks omitted); *see also Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co.*, 2005 WL 1862631, *15-16 (W.D. Tex. July 8, 2005). An attorney-client relationship is the type of close relationship that would allow the attorney foreseeably to be bound to a contract signed by the client. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962).

clause).  As an agent of Goyal and as a party whose role in the transaction was contemplated by the Agreement, it was entirely foreseeable that his counsel would participate in the advancement and indemnification transactions under the Agreement.  *See* Exh. 1 at Recital E (noting need for executives to maintain adequate defense); ¶1(b) (attorneys' fees are indemnifiable expenses).  WilmerHale is a transaction participant.

Second, McAfee is equitably estopped from resisting application of the forum selection clause because it is asserting claims against WilmerHale that rely on and are inextricably intertwined with the Agreement.  "[T]o allow a party to 'have it both ways' by asserting claims intertwined with the agreement but denying the forum selection clause's applicability would 'fly in the face of fairness.'"  *Alternative Delivery Solutions, Inc. v. R. R. Donnelly & Sons Co.*, 2005 WL 1862631, at *15-16 (W.D. Tex. July 8, 2005).  The entire thrust of McAfee's lawsuit seeks a ruling on the reasonableness of legal expenses it has advanced to Goyal, which is directly governed by the Agreement.  Because McAfee is pursuing recovery from a non-signatory to a contract on a theory that implicates its contract duties, it is equitably estopped from pursuing such claims while denying application of the Agreement's forum selection clause.

## III.    Goyal Is an Indispensable Party Who Cannot Be Joined.

Fed. R. Civ. P. 19, entitled "Required Joinder of Parties," also requires dismissal of this action, pursuant to Rule 12(b)(7).  Goyal is a necessary party under Rule 19(a), and he cannot be joined.  Because of the unfairness -- both to him and WilmerHale -- of proceeding without him under the factors specified by Rule 19(b), dismissal is required here.

### A.    Goyal Is a Person Who Is Required To Be Joined if Feasible.

Rule 19(a) provides that a person "who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined" if the absent

person claims an interest in the subject of the action and his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of that interest. Rule 19(a) further states that if a joined party "objects to venue and the joinder would make venue improper, the court must dismiss that party." Fed. R. Civ. P. 19(a)(3).

First, Goyal is a person who must be joined under Rule 19(a). He "claims an interest relating to the subject of the action," and he cannot protect that interest as a non-party. He is indispensable because "[f]ederal courts consistently hold that a party to an agreement in dispute is an indispensable party under Fed. R. Civ. P. 19(a) in a suit seeking to rescind, annul, or interpret that agreement." *Altava Health Mktg., Ltd. v. Shortgrass, Inc.*, 2005 WL 2277598, at *9 (S.D. Tex. 2005); *accord Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004) (it is "well-established that a party to a contract which is the subject of the litigation is a 'necessary' party"); *Delcon Constr. Corp. v. HUD*, 205 F.R.D. 145, 147-48 (S.D.N.Y. 2002); *Global Dis. Travel Servs., LLC v. TWA*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997).

McAfee contends that it will "protect[]" Goyal's interests by this suit, Dkt. #32 at 10, but Goyal's suit in Delaware confirms that he does not see it that way. He has a vital interest in the disposition of claims based on reasonableness, because McAfee has announced its intention to come after him to recoup any payments found to be unreasonable.

Indeed, even apart from the effect on Goyal of a final disposition of these claims, he has a compelling interest in protecting his attorney-client and work product privileges from invasion by McAfee and imposing limits on discovery that it may demand from WilmerHale, whose work product reflects his confidences, particularly when the party seeking the discovery, McAfee, is cooperating with the Government in his ongoing criminal proceeding. Claims

asserted by McAfee against WilmerHale would, if litigated in this case, interfere with the attorney-client relationship and Goyal's privileges. McAfee's claims involve challenges to WilmerHale's professional judgments about the nature, need for, and amount of work performed. These are precisely the types of claims that would impede the attorney-client relationship, as extensive discovery would undoubtedly be sought. To defend an action challenging the time devoted to Goyal's defense, WilmerHale would be called upon to reveal work product or even attorney-client privileged information in order to explain why certain issues merited research, or why it was particularly important to file certain motions. In any such proceeding, Goyal should be present as a party.

Separately, Goyal is a necessary party from WilmerHale's standpoint, because to exclude him would be to leave the firm "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B). WilmerHale would be attempting to defend itself from charges that the time spent on his defense was unnecessary, while seeking to preserve the confidences of its client. The fact that Goyal, who is knowledgeable about his representation, would not be heard from when the Court addresses these issues would only exacerbate the conflicting obligations imposed on WilmerHale.

B.    **Because Goyal Cannot Be Joined and He Would Be Prejudiced if This Action Proceeded in His Absence, the Action Should Be Dismissed.**

Joinder of Goyal in this action is not feasible. The Agreement confers on Goyal the right to litigate claims instituted under or arising out of the Agreement in state court in Delaware. Through the lawsuit he brought against McAfee in Delaware, Goyal has shown his intent to invoke that right. Exh. 2. If joined here, he would object to venue, and he would be entitled to be dismissed from this action. *See* Fed. R. Civ. P. 19(a)(3).

Because joinder is improper, Rule 19(b) calls for a determination of "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003). The factors are (1) the extent to which prejudice will result to the absent person; (2) the court's ability to shape relief to avoid prejudice to that person; (3) the adequacy of the relief available to the remaining parties in that person's absence; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Dismissal here is warranted.

Goyal would be prejudiced if this action went forward in his absence. His liberty is at stake in the criminal case in which WilmerHale continues to represent him. He should not be forced to wonder if his attorneys are being pressured to reveal the precise nature of their services for him, in order to reduce their exposure to claims of "fraud" and "theft."

Moreover, as described above, Goyal has substantial interests in the issue of the reasonableness of the advances, not only because the claims themselves threaten his relationship with his lawyers, but because their disposition can affect his rights and liabilities to both McAfee and WilmerHale. Without joinder of Goyal as a party, his ability to protect these interests is impaired. The Sixth Circuit has held in a case involving legal malpractice claims, that one of two co-clients who had not joined the action was an indispensable party in whose absence a legal malpractice case could not proceed. *See Jenkins v. Renau*, 697 F.2d 160 (6th Cir. 1983).[11] Here,

---

[11] Courts have repeatedly held that co-obligees under contracts are all indispensable parties under Rule 19(b) when one of them sues their common obligor. *See Harrell & Sumner Constr. Co. v. Peabody Petersen Co.*, 546 F.2d 1227, 1228-29 (5th Cir. 1977); *Bry-Man's, Inc. v. Stute*, 312 F.2d 585 (5th Cir. 1963); *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 2008 WL 744823, at *6-7 (S.D. Tex. 2008); *Evergreen Int'l Aviation, Inc. v. Banc of Am. Secs., LLC*, 2004 WL 1717627, at *3-4 (D. Or. 2004). The purposes of this rule are to facilitate consistent enforcement of the same obligations owed to multiple parties and to promote finality. *See Bry-Man's*, 312 F.2d at 587-88 & n.6. Goyal is even more indispensable than a co-obligee because *only* he, and *not* McAfee, is a contractual obligee of WilmerHale with respect to the services over which McAfee sued.

Goyal is the counter-party as between him and McAfee, and his attorney-client relationship with WilmerHale is ongoing. Accordingly, there is an even stronger basis than in *Jenkins* for concluding that Goyal is an indispensable party in McAfee's action against his lawyers for allegedly doing unnecessary work on his behalf.

As noted above, it is not clear at the present time who, as between McAfee and Goyal, will ultimately bear the responsibility for WilmerHale's fees, because Goyal's entitlement to indemnification will not be decided until after his prosecution is over. If this case proceeds in his absence, WilmerHale faces the prospect of seriatim litigation with the non-party not bound.

Finally, "the plaintiff would have an adequate remedy if the action were dismissed for non-joinder." Indeed, McAfee is already present in Delaware, where it has assured the court it intends to recover all or some of the fees it has paid, in the forum that plaintiff chose for determining its rights. WilmerHale also is prepared to appear in the Delaware proceeding without contesting personal jurisdiction or venue.

Rule 19(b) requires dismissal of this action.

## IV.    McAfee's Claims Violate Rule 9(b) and Otherwise Fail To State a Claim.

Dismissal is also required because McAfee's claims of fraud and theft by deception violate Rule 9(b), and its remaining theories fail to state a claim for relief.

### A.    McAfee's Fraud Claims Are Far Too Vague To Comply with Rule 9(b).

Rule 9(b) provides that when "alleging fraud . . . a party must state with particularity the circumstances constituting [the] fraud." "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000). Because fraud allegations can damage a defendant's reputation, Rule 9(b) is designed to eliminate speculative fraud actions predicated only on the

hope of developing supporting facts through discovery. *Scott v. Pfizer, Inc.*, 2008 WL 508641, at *6 (E.D. Tex. 2008).[12]

Even after four attempts, McAfee's fraud and theft by deception claims are not pleaded with sufficient particularity to approach the pleading standard of Rule 9(b). It does not identify which statements are false or in what respect they are false. These pleading defects remain unaddressed in the current Complaint, despite the fact that WilmerHale challenged them in its initial motion to dismiss. McAfee has represented that the Third Amended Complaint "add[ed] even more detail to its fraud claims," Dkt. #32 at 13, but there is no new detail, or any detail, in the fraud claims. Exh. 6 (Third Amended Complaint, with new text bracketed).

To comply with Rule 9(b), a party alleging fraud must specify each allegedly misleading statement; identify the speaker; state when and where each statement was made; plead with particularity the contents of the false representations; plead with particularity what the person making the representation obtained by it; and explain the reason or reasons why the statement is fraudulent. *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 245 (5th Cir. 2000); *Siemens Bldg. Techs., Inc. v. Grot, Inc.*, 2005 WL 2012263, at *1 (E.D. Tex. 2005) (recommending dismissal of claims under Rule 9(b) where plaintiff did not specify which specific statements were false or misleading). A party pleading fraud must set forth "the who, what, when, and where" of the fraud for the claim to be viable. *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997); *GMAC Commercial Mortg. Corp. v. East Tex. Holdings, Inc.*, 441

---

[12] Rule 9(b) applies not just to claims specifically labelled as "fraud" but also to claims that sound in fraud. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D. Tex. 1998) (requirements of Rule 9(b) apply to cases in which the gravamen of the claim is fraud, even if not labeled fraud). McAfee's theft by deception claim, which alleges that WilmerHale "unlawfully appropriated millions of dollars from Plaintiff by deception and fraudulent billing," Third Am. Compl. ¶ 23, sounds in fraud and thus must comply with Rule 9(b).

F. Supp. 2d 801, 809-10 (E.D. Tex. 2006) (Schneider, J.) (dismissing under Rule 9(b) with leave to amend when complaint failed to allege time and place of specific false statements, and why those statements were fraudulent).

McAfee's allegations of fraud and theft are defective in every respect. It alleges that "Defendant made material representations to plaintiffs that were false," *id.* ¶ 18, without stating what the misrepresentations were. Similarly, McAfee's theft claim alleges only that WilmerHale "unlawfully appropriated money" by "deception and fraudulent billing," *id.* ¶ 23, but fails to identify in what respect WilmerHale's bills were allegedly deceptive or false. It contends that WilmerHale had too many timekeepers and charged too much, but the number of timekeepers and the amount of each invoice was known to McAfee when it paid each bill, and it does not contend otherwise. The claim that the fees were excessive, all of which fees were fully disclosed, does not state a fraud claim. *See Fulbright & Jaworski, L.L.P. v. Mariner Health Care, Inc.*, 2006 WL 4007923, at *10 (W.D. Tex. 2006) (recommending summary judgment on fraud claims when client had reviewed bills but later claimed legal fees were unreasonable, but there was no allegation that the firm had not done the work that was billed). Rule 9(b) plainly requires much more. McAfee's claims of fraud and theft should be dismissed.

**B.      McAfee's Other Claims Should Be Dismissed Under Rule 12(b)(6).**

A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (orig. emph.) (quotation marks omitted). *See United States v. Williams*, 2008 WL 783555, at *2 (E.D. Tex. Mar. 20, 2008) (Schneider, J.) (mere conclusory allegations not accepted). McAfee has failed to state any viable claim for relief against WilmerHale, and its Third Amended Complaint should be dismissed.

1. **McAfee's Claims of Negligence, Gross Negligence and Breach of Fiduciary Duty Must Be Dismissed.**

McAfee's claims for negligence, gross negligence and fiduciary breach must be dismissed under Rule 12(b)(6) because these claims require that WilmerHale owe McAfee a duty of care, a duty not owed here. McAfee has no attorney-client relationship with WilmerHale, and it has not pleaded facts giving rise to a fiduciary duty.[13]

Texas law does not recognize a cause of action for legal malpractice or negligence asserted by a party that does not have an attorney-client relationship with the attorney through privity of contract. *See McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 793 (Tex. 1999) (Texas is a "strict privity" jurisdiction); *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996); *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 806-07 (5th Cir. 1998); *Thompson v. Vinson & Elkins*, 859 S.W.2d 617, 621 (Tex. App.--Houston [1st Dist.] 1993, writ denied). An attorney simply owes no duty to third parties who are not his clients, even if the third party is damaged by the attorney's negligent representation of the client. *See Barcelo*, 923 S.W.2d at 577. Nor does the fact that McAfee paid the fees incurred by WilmerHale's client create a relationship that supports a duty running from WilmerHale to McAfee. *See Roberts v. Healey*, 991 S.W.2d 873, 880-81 (Tex. App.--Houston [14th Dist.] 1999, pet. denied) (client's mother, who paid fees, cannot sue because no duty owed to her).

Because McAfee does not allege that it is in privity with WilmerHale through an attorney-client relationship, it has no standing to maintain actions for negligence. Therefore, its claims for negligence and gross negligence must be dismissed.

---

[13] Because McAfee's Complaint cites Texas law, WilmerHale assumes for purposes of this Motion that Texas law governs McAfee's right to maintain a direct action claim.

Similarly, McAfee has not alleged any facts to support its conclusory assertion that WilmerHale owed it a fiduciary duty.  Third Am. Compl. ¶¶ 31-32.  An attorney does *not* have a fiduciary duty to non-clients.  *See Swank v. Cunningham*, 2008 WL 796982, at *15 (Tex. App.--Eastland 2008, no pet.); *Safeway Managing Gen. Agency, Inc. v. Clark & Gamble*, 985 S.W.2d 166, 168 (Tex. App.--San Antonio 1998, no pet.); *Scherrer v. Haynes & Boone, LLP*, 2002 WL 188825, at *3 (Tex. App.--Houston [1st Dist.] 2002, no pet.).  The allegations in these two paragraphs are inadequate to state a cause of action for fiduciary breach, and so McAfee's Fiduciary Duty claim should be dismissed.  To the extent that such a claim alleges fraud or deception -- which is impossible to determine from the conclusory two-paragraph pleading of it -- the claim also should be dismissed for failure to satisfy the standards of Rule 9(b).  *See Ingalls v. Edgewater Private Equity Fund III, L.P.*, 2005 WL 2647962, at *5 (S.D. Tex. 2005) (Rule 9(b) applies to fiduciary claim that rests on the same facts as fraud claim).  Nor may a plaintiff characterize claims that actually sound in negligence as claims for breach of fiduciary duty.  *Deutsch v. Hoover, Bax & Slovacek*, 97 S.W.3d 179, 189 (Tex. App.--Houston [14th Dist.] 2002, no pet.).

McAfee's "claim" for disgorgement or fee forfeiture also should be dismissed.  Disgorgement is not a free standing cause of action, but rather is a remedy for serious breaches of fiduciary duties to a client.  *See Swank*, 2008 WL 796982 at *2.  In the absence of a fiduciary duty, there is no basis for this claim.

### 2.    McAfee's Claim of Assumpsit Must Be Dismissed.

Assumpsit is a quasi-contractual claim, akin to actions for money had and received.  *See McNair v. City of Cedar Park*, 993 F.2d 1217, 1220-21 (5th Cir. 1993) (explaining that Texas law is not concerned with which form of the action is used).  An action in assumpsit is a request that a court find an implied-in-law contract that the party holding the money is

obligated to return it to the plaintiff. *See id.* at 1220. But McAfee's quasi-contract claim is barred because there already is a contract governing the subject matter of the claim, a contract that (as McAfee has admitted) provides it a remedy at law. *See BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 770 (Tex. 2005). And, to the extent that its assumpsit claim is yet another vehicle for asserting that WilmerHale's fees were not reasonable, the "voluntary payment rule" forecloses a recovery on the facts alleged. Finally, to the extent that the assumpsit claim is based on fraud, the claim fails for the same reason as the other fraud claims: McAfee has pleaded no facts supporting fraud with particularity.

The assumpsit claim is barred because it is improper to find an implied-in-law contract when an express contract governs the subject matter of the dispute. Where there is an express contract governing the subject matter, "there could be no implied contract arising out of the acts of performance of it. The one is destructive of the other." *Musick v. Pogue*, 330 S.W.2d 696, 699 (Tex. App.--San Antonio 1959, writ ref'd n.r.e.). "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 50 (Tex. 2008) (alteration and quotation marks omitted); *see also Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) (affirming dismissal of an unjust enrichment claim when there was contract covering the subject matter); *Oden v. Vanguard Car Rental USA, Inc.*, 2008 WL 901325, at *4 (E.D. Tex. 2008) (granting 12(b)(6) motion against unjust enrichment and "money had and received" claims in face of a contract).

Despite McAfee's studied silence in the Third Amended Complaint about how it came to pass that it paid invoices originating with WilmerHale -- notwithstanding the admissions in its first three complaints and in Delaware -- McAfee's payments have all been made as

advances for the benefit of Goyal pursuant to the Indemnity Agreement, subject to governing Delaware law. McAfee has opted to pursue claims against WilmerHale, a non-party to the contract, to avoid litigating with Goyal in the time and manner specified by Delaware law and the Agreement. But quasi-contract does not serve to circumvent express contracts and governing principles of law. The assumpsit claim must be dismissed in the face of an express agreement -- even as to a non-signatory of that Agreement. *See McIntosh v. Wiley*, 2006 U.S. Dist. LEXIS 89589, at *17-18 (S.D. Tex. 2006) (granting summary judgment against plaintiff's assumpsit and related causes of action brought against a defendant with whom it did not have a contract, when it did have a contract governing the subject matter with another defendant). And when a plaintiff has an adequate remedy at law -- for example, a right of subrogation -- a plaintiff may not maintain an action for quasi-contract. *See Tex. Carpenters Health Benefit Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678-79 (E.D. Tex. 1998); *BMG Direct Mktg.*, 178 S.W. 3d at 770. Here, because McAfee will have contractual subrogation rights in the event that it does not recoup WilmerHale's fees from Goyal, its assumpsit claim should be dismissed.

The assumpsit claim, to the extent it asserts that the fees charged were unreasonable, is also barred by the voluntary payment rule. Under this rule, there is no basis for a claim to a return of payments voluntarily made, in the absence of fraud or duress. In applying this rule, the Texas Supreme Court has stated:

> [A] party who pays a claim is deemed to have made his own decision that it is justly due. If he thinks otherwise, he should resist. He should not pay out his money, leading the other party to act as though the matter were closed, and then be in a position to change his mind and invoke the aid of the courts to get it back.

*BMG Direct Mktg.*, 178 S.W.3d at 768-69; *Sanders v. Republic Nat'l Bank*, 389 S.W.2d 551, 554 (Tex. App.--Tyler 1965, no pet.).

That a payment was voluntary is a defense to claims for assumpsit and other quasi-contractual theories. For example, in *Edwards v. Mid-Continent Office Distrib., L.P.*, 252 S.W.3d 833 (Tex. App.--Dallas 2008, pet. filed), the Court of Appeals affirmed the district court's judgment in favor of the defendant on a claim for money had and received, when the plaintiff purchaser of receivables had paid for the receivables, had not overpaid the bill, did not pay the wrong person, and was not defrauded. *Id.* at 840-41; *see Barrett v. Ferrell,* 550 S.W.2d 138, 143 (Tex. App.--Tyler 1977, writ ref'd n.r.e.) (judgment rendered for defendant in an action for money had and received, when plaintiff sought return of money paid in consideration to defendant).

The Third Amended Complaint makes clear that the payments at issue here are subject to the voluntary payment rule. McAfee alleges that WilmerHale submitted bills and invoices for payment that were for "unreasonable and unjustifiable" and "excessive" fees, Third Am. Compl. ¶¶ 5, 9, 32, which McAfee then paid, proximately causing its damages, ¶¶ 26, 32, 35(e).[14] Notably, McAfee has conceded that it received the itemized bills from WilmerHale. *See* Dkt. #32 at 10. "[K]nowledge of a . . . fee's amount and the circumstances under which it will be imposed is sufficient to charge one with 'full knowledge of the facts' for purposes of the voluntary-payment rule's application." *BMG Direct Mktg.*, 178 S.W.3d at 773; *cf. Skadden, Arps, Slate, Meagher & Flom LLP v. Angulo*, 2003 WL 25668876 (N.Y. Sup. Ct. 2003) (holding under an account stated theory that client could not question reasonableness of legal fees where itemized invoices had been received and were not contested); *Fulbright*, 2006 WL 4007923, at *10 (recommending summary judgment on fraud claims when client had reviewed bills but later claimed legal fees were unreasonable).

---

[14] Of course, McAfee's position in Delaware is that any challenges to reasonableness of the fees should wait until a determination has been made as to whether Goyal is entitled to be indemnified. Accordingly, McAfee's claims here are not ripe. But in any event, McAfee's allegations that it paid unreasonably high fees are not actionable in light of the voluntary payment rule.

If McAfee's assumpsit claim is instead based on a fraud theory (rather than an unreasonableness theory), it is still subject to dismissal for the same reason the other fraud claims should be dismissed: because the Third Amended Complaint still has failed to plead any facts supporting fraud with the particularity required by Rule 9(b).

## Conclusion and Prayer

Defendant WilmerHale respectfully requests that this Court dismiss this action, pursuant to Fed. R. Civ. P. 12(b) (1), (3), (6), (7), and 9(b).

Dated:  July 17, 2008

Of Counsel:

Shawn M. Bates
State Bar No. 24027287
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas  77010
(713) 732-8000
(713) 632-8002 (Fax)

Gerson A. Zweifach
Williams & Connolly LLP
725 Twelfth St., N.W.
Washington, D.C.  20005
202-434-5534
202-434-5029 (Fax)

Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154700
Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600
Houston, Texas  77010
(713) 732-8000
(713) 632-8002 (Fax)

Attorney-in-Charge for Defendant Wilmer
Cutler Pickering Hale and Dorr LLP

## Certificate of Service

I certify on this 17th day of July, 2008, a true copy of this document was filed and served electronically on all counsel of record by e-filing, facsimile, and hand delivery.

/s/  Shawn M. Bates
Shawn M. Bates