# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MCAFEE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-CV-160 |
| | § | |
| WILMER CULTER PICKERING | § | |
| HALE AND DORR, LLP, | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
## THE THIRD AMENDED COMPLAINT UNDER RULES 12(b)(1), (3), (6), (7), AND 9(b)

McAfee, Inc. ("McAfee") serves its response to Defendant Wilmer Cutler Pickering Hale and Dorr, LLP's ("Wilmer Hale") Motion to Dismiss its Third Amended Complaint Under Rules 12(b)(1), (3), (6) (7), and 9(b).

## SUMMARY OF RESPONSE

For more than four years, Wilmer Hale presented knowingly-fraudulent invoices to McAfee every month in Texas, and accepted millions of dollars it knew it did not earn from McAfee's Texas office. Having committed fraud in Texas, Wilmer Hale now claims it should not be forced to answer for that fraudulent conduct in Texas, attempting to dismiss the case before McAfee can gain discovery into the true extent of its fraud. Unfortunately for Wilmer Hale, the law requires otherwise.

Wilmer Hale's motion suffers from the "garbage in, garbage out" principle: the motion is based upon skewed facts and law, and as a result the motion itself is baseless. Specifically, the motion is based upon at least two faulty assumptions: (1) that this case has any meaningful

connection to a 1996 indemnity agreement between McAfee and its former CFO, Prabhat Goyal ("Goyal"); and (2) that McAfee's claims against Wilmer Hale depend upon a ruling in a Delaware lawsuit between McAfee and Goyal. Both assumptions are incorrect. For this reason alone, Wilmer Hale's motion must be denied. Indeed, the Delaware lawsuit was filed *after* this case, and was filed for the singular purpose of giving Wilmer Hale an excuse for attempting to avoid a Texas trial.

Wilmer Hale's attempt to get this case dismissed for lack of ripeness must also fail. Incredibly, Wilmer Hale claims that, although McAfee has already been defrauded out of millions of dollars, its claims are not ripe because it *may* be able to recover the entire amount from Goyal. Under Wilmer Hale's warped analysis, McAfee's claims will apparently *never* be ripe if it can recover the money Wilmer Hale overbilled it from Goyal. In fact, the opposite is true—McAfee will not know the true amount Goyal is responsible for until it is first determined how much Wilmer Hale fraudulently overbilled McAfee.

Similarly, Wilmer Hale's attempts to dismiss this case based upon a forum selection clause must also fail. Wilmer Hale is not a party to the contract containing that clause, and is not otherwise entitled to enforce it. Even if it were, McAfee's claims do not fall within the forum selection clause.

Wilmer Hale also is not entitled to dismissal for failure to join an alleged indispensable party, Goyal. While Goyal may or may not be a witness in this case, he certainly is not an indispensable party. The only issue is whether Wilmer Hale stole money from McAfee—and as such, the only *indispensable* parties are Wilmer Hale and McAfee.

Finally, Wilmer Hale is not entitled to dismissal based upon the sufficiency of McAfee's pleadings. The mere fact that Wilmer Hale chose to bury this argument at the back of its motion

speaks volumes, given the complete lack of merit of its other arguments. In any event, McAfee's complaint easily satisfies the applicable pleading standards. As such, Wilmer Hale's motion to dismiss should be denied.

<u>**FACTS**</u>

A.      **Wilmer Hale unleashes 50 lawyers to defend a single criminal defendant, eventually defrauding McAfee out of millions of dollars.**

Wilmer Hale is an international law firm "more than 1,000 lawyers strong" with offices in 11 cities in the United States, Europe and Asia. (Complaint at ¶ 5).[1] This mega firm claims to be unparalleled in their legal representation and touts itself as being at the "very top" of the legal profession. (Complaint at ¶ 5). Regretfully, this 1000-lawyer firm set aside their ethics in pursuit of a fee bonanza through an unjustifiable and unreasonable billing scheme which enriched it in excess of twelve million dollars. (Complaint at ¶ 5).

Wilmer Hale was retained to represent the legal interests of McAfee's former CFO, Prabhat Goyal, three thousand miles away from its home office in a one-defendant criminal action brought in Northern California. (Complaint at ¶ 6). The case was tried by Wilmer Hale's east coast-based lawyers, ending in a felony conviction of Goyal at the hands of a San Francisco jury. (Complaint at ¶ 5). Wilmer Hale's fortunes were decidedly different—it raked in an astounding *twelve million dollars* in this single-defendant criminal action without parallel civil litigation. (Complaint at ¶ 6).

Invoking the notion that McAfee could not question the necessity of actions taken to "ensure Goyal's freedom" even though it was paying the bills, Wilmer Hale intentionally over worked and churned the representation of Goyal, shamelessly employing over 100 Wilmer Hale timekeepers in the feeding frenzy. (Complaint at ¶ 7). Wilmer Hale's bills reflect at least *16*

---

[1] Citations to the Complaint are to McAfee's current live pleading, its Third Amended Complaint.

*partners, 34 associate attorneys, 10 legal assistants and 49 staff personnel.* (Complaint at ¶ 7). Wilmer Hale also billed for unreasonable expenses, including almost $200,000 in expenses for luxury hotel rooms, limousines and charges for room service and bar tabs. (Complaint at ¶ 8).

**B.     Far from being ashamed by its actions, Wilmer Hale forces McAfee to pursue litigation in order to recover the amounts it was obviously overbilled.**

Far from being embarrassed by its actions as it should have been, Wilmer Hale actually rebuked McAfee for daring to question its efforts toward preserving the personal freedom of the convicted felon, Goyal, and decried as "loathsome" McAfee's action in availing itself of the relief it seeks from this court. (Complaint at ¶ 10).

As such, McAfee was forced to actively pursue this lawsuit. Wilmer Hale now seeks to avoid answering for its wrongful conduct. But for the reasons explained herein, Wilmer Hale's motion to dismiss should be denied.

## ARGUMENT AND AUTHORITIES

**I.     This case does not arise out of the indemnity agreement, and the issues involved in the Delaware lawsuit are not even remotely similar to those involved here.**

Wilmer Hale's motion to dismiss is based almost entirely upon two assumptions: (1) that the Indemnity Agreement between McAfee and Goyal is central to this case; and (2) that the Delaware lawsuit addresses the same issues involved in this case. These assumptions are faulty, and as such, Wilmer Hale's motion must be denied.

**A.     This case does not arise out of the Indemnity Agreement.**

The Indemnity Agreement is a contract entered into on April 18, 1996 between McAfee and Goyal. (Ex. 1, Indemnity Agreement). Among other things, the agreement sets out McAfee's obligation to advance expenses in defense of Goyal, and the circumstances under which McAfee can recoup the expenses it advanced. (Ex. 1 at §§ 4(a), 6). McAfee and Goyal are the only

signatories to the agreement. Wilmer Hale is not a party to the agreement, nor was its representation of Goyal even contemplated when the agreement was signed.

McAfee's claims in this lawsuit do not challenge any provision of the Indemnity Agreement. Nor is McAfee seeking to adjudicate its rights and responsibilities with respect to Goyal. Instead, this is a tort case—McAfee seeks to recover damages that resulted from Wilmer Hale's tortious conduct in overbilling McAfee for millions of dollars in legal fees. (Complaint at ¶¶ 5-33).

In other words, the determination of McAfee's claims do not rest upon the Indemnity Agreement *at all*. The only issue involved in this case is whether Wilmer Hale tortiously overbilled McAfee—the determination of which does not rest upon the Indemnity Agreement. Wilmer Hale's motion to dismiss should therefore be denied.

**B.** **The Delaware proceeding involves issues related to the Indemnity Agreement, and was filed for the sole purpose of attempting to avoid litigation of Wilmer Hale's fraudulent conduct in Texas.**

The Delaware proceeding has only one connection to this litigation—it was filed (likely at Wilmer Hale's direction) as an attempt to assist Wilmer Hale in avoiding having to answer for its fraudulent conduct in Texas. That much is clear from the timing and circumstances of the Delaware case.

The Delaware case was filed in May, almost a month after the Texas case. (Ex. 3, Delaware pleading; Ex. 4, Original Petition). It was filed as an advancement proceeding between McAfee and Goyal. (Ex. 3). The only issue was whether McAfee had to continue to advance Goyal's litigation expenses. (Ex. 3). McAfee agreed soon after the case was filed to continue advancing Goyal's litigation expenses. (Ex. 2 at 4-5). As such, if the true motivation for the Delaware lawsuit was the advancement issue, the lawsuit would have been dismissed at that

point. But it wasn't, because the true motivation was to avoid a trial of Wilmer Hale's fraudulent conduct in Texas.

Moreover, the scope of an advancement proceeding is summary in nature, and is limited to determining the issue of entitlement in accordance with the corporation's own uniquely-crafted advancement provisions. *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 213 (Del. 2005). If Goyal's defense is ultimately unsuccessful, then McAfee would also be entitled to pursue a recoupment action in Delaware based upon the Indemnity Agreement. (Ex. 1 at § 6). But the potential existence of its recoupment claim has no effect on McAfee's claims here. Indeed, the opposite is true—Goyal will *benefit* from any recovery that McAfee obtains from Wilmer Hale because he will have to pay McAfee less money in recoupment.

Even the Delaware judge recognized that the Texas action is independent from the Delaware action: "[T]here really isn't a claim against [Goyal] the plaintiff in this case  in Texas." (Ex. 2 at 16). Wilmer Hale brushed this off in its first motion to dismiss by claiming that the Delaware judge was "misled" by McAfee. (Original Motion to Dismiss at 9). On the contrary, the only one that "misled" the Delaware judge was Goyal's counsel—who told the judge that "McAfee is pushing its recoupment claims in Texas." (Ex. 2 at 12). Despite this blatant misrepresentation, the learned Delaware judge recognized that the Texas action does not involve the same parties or issues as the Delaware action.

Thus, Wilmer Hale's baseless arguments aside, it is clear that the Delaware lawsuit involves parties and issues that are not involved here. Wilmer Hale's motion to dismiss should therefore be denied.

## II.    McAfee's claims are ripe for adjudication.

### A.    McAfee's claims are ripe because it has already been substantially damaged by Wilmer Hale's greed.

Wilmer Hale argues McAfee's claims should be dismissed under Rule 12(b)(1) because they are not yet "ripe." Wilmer Hale is both legally and factually incorrect.

The "basic rationale" behind the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves *in abstract* disagreements." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 (5th Cir. 2008) *quoting Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). "A court should dismiss a case for lack of 'ripeness' *when the case is abstract or hypothetical*." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir.2003) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir.1987)). "The key considerations [for ripeness] are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.*

Wilmer Hale claims this case is not ripe because McAfee's damages "are entirely contingent upon alleged injury to McAfee that may never be realized." (Motion at 11). This begs the question of whether Wilmer Hale would feel the same way if it were the victim of such large-scale fraud instead of the perpetrator. In any event, Wilmer Hale's argument is incorrect.

In *Kennard v. Indianapolis Life Ins. Co.*, 420 F.Supp.2d 601 (N.D. Tex. 2006), the defendant moved to dismiss the case for lack of ripeness because it claimed—as Wilmer Hale claims here—that an ongoing underlying proceeding rendered the plaintiff's damages "potential and unrealized." *Id.* at 606. The trial court rejected the argument, explaining that the case was ripe for adjudication because the plaintiff had already sustained damage:

> **The fact that the IRS has yet to rule on the Kennard DBP's validity for tax deduction purposes is irrelevant; Kennard has already suffered damages and continues to incur expenses, most notably while defending his audit. These**

**injuries are already immediate and definite, so the fact that the other damages from the IRS audit remain contingent at this time do not make this dispute premature or speculative.** *Accordingly, the court finds this case to be ripe for judicial resolution.*

*Id.* at 606-07.

As the Plaintiff did in *Kennard*, McAfee has already sustained damages as a result of Wilmer Hale's greedy, tortious and unlawful conduct. (Complaint at ¶¶ 5-10). Thus, contrary to Wilmer Hale's allegations, this case is ripe for adjudication.

### B. McAfee's claims against Wilmer Hale are ripe regardless of any outstanding issues between McAfee and Goyal.

Wilmer Hale tries desperately to make it appear as though McAfee's comments to the Delaware court somehow affect the ripeness of its claims here. (Motion at 9-10). Wilmer Hale's efforts are futile.

As explained above, the Delaware case is an advancement proceeding. (Ex. 2 at 16). As the hearing transcript upon which Wilmer Hale relies makes clear, the only "contingent" and "unripe" issues in the Delaware case are the *contractual issues* between McAfee and Goyal. (Ex. 2 at 16-17). The Delaware court also recognized that those claims are not at issue in the Texas case. (Ex. 2 at 16).

Here, on the other hand, McAfee has alleged claims to collect funds Wilmer Hale *has already* defrauded it of. (Complaint at ¶¶5-33). There is obviously nothing "contingent" or "unripe" about McAfee's claims.

Wilmer Hale also attempts to characterize this lawsuit as involving the same "reasonableness" of fees issue as the one that could potentially be involved in the Delaware lawsuit. The issues are not even remotely the same. The "reasonableness" issue in Delaware arises out of the Indemnity Agreement. Under the Indemnity Agreement, Goyal is entitled to

indemnity for the fees and expenses "reasonably incurred by him" in connection with his "successful defense." (Ex. 1 at § 4(a)). Those issues are not yet ripe because the issue of whether Goyal's expenses are reasonable only arises if Goyal's defense is *unsuccessful*. (Ex. 1 at § 4(a)).

Here, on the other hand, the issue is whether Wilmer Hale engaged in tortious conduct when it billed and received payment from McAfee for more than $12 million in a single-defendant criminal case with no parallel civil litigation. (Complaint at ¶¶ 5-33). There can be no question that these issues are already ripe, as Wilmer Hale has already engaged in—and McAfee has already been damaged by—the allegedly tortious conduct.

Equally important, this case is not about whether Wilmer Hale's fees are *reasonable*. Indeed, there is little doubt the fees were *unreasonable*—Wilmer Hale billed more than $12 million for over 100 timekeepers in a single-defendant criminal case with no parallel civil litigation. (Complaint at ¶¶ 5-7).

Instead, the issue here is whether Wilmer Hale tortiously billed McAfee for fees to which it was not entitled. (Complaint at ¶¶ 11-33). In other words, the reasonableness of Wilmer Hale's bills is not at issue—the tortiousness of its conduct is. As such, McAfee's claims are ripe, and Wilmer Hale's motion to dismiss should be denied.

**C.    McAfee's claims are not contingent upon "uncertain future events."**

Wilmer Hale also argues that McAfee's claims are not ripe because they are based upon "uncertain future events"—namely, the outcome of Goyal's appeal. (Motion at 10-11). But as explained above, while McAfee's *recoupment* claim against *Goyal* is unripe because it is based upon "uncertain future events," its *tort* claims against Wilmer Hale are unquestionably ripe.

Finally, Wilmer Hale makes the rather curious argument that this case is not ripe because McAfee may be able to recover from Goyal the fees Wilmer Hale fraudulently billed. (Motion at

11-12). To the contrary, the fact that McAfee may have a contingent future right to recoupment against Goyal actually underscores the importance of deciding McAfee's claims against Wilmer Hale now. The amount of money that Wilmer Hale tortiously obtained from McAfee needs to be determined now, so that in the event that McAfee is entitled to recoupment from Goyal, both Goyal and McAfee will know the exact amount subject to recoupment. In other words, Goyal will *benefit* from any recovery in this case. Thus, the contingency of the issues between McAfee and Goyal have absolutely no effect on the ripeness of McAfee's claims against Wilmer Hale. Wilmer Hale's motion to dismiss should therefore be denied.

**D.** **The only "hardships" Wilmer Hale would suffer if this case goes forward is that it would be forced to divulge the full extent of its fraud and to return the legal fees it did not earn. McAfee, on the other hand, would be deprived of the millions of dollars it has already been forced to pay.**

Incredibly, Wilmer Hale claims that, even though it overcharged McAfee *"for five years,"* McAfee would not suffer hardship if it were forced to wait even longer to bring its claims. (Motion at 13 (emphasis added)). In Wilmer Hale's warped view, it would be Wilmer Hale—not McAfee—who would suffer hardship if this case proceeds.

Clearly, McAfee would be harmed by being prevented from pursuing its claims to recover the money Wilmer Hale defrauded it out of. (Complaint at ¶¶ 5-10, 11-21). Wilmer Hale, on the other hand, does not identify exactly how it would suffer hardship if this case goes forward. Presumably, the hardships Wilmer Hale would suffer include: (1) being forced to open its books and divulge the full extent of its fraud; and (2) being forced to give back the money it stole from McAfee. While these are undoubtedly "hardships" in one sense of the term, they most certainly are not the types of hardships that would allow for dismissal.

In sum, there is no question that McAfee's claims are ripe. Wilmer Hale's motion to dismiss should therefore be denied.

## III. Wilmer Hale cannot rely upon the Indemnity Agreement's forum selection clause.

Wilmer Hale's desperation is perhaps best illustrated by its attempt to dismiss this case based upon a forum selection clause: (1) that is contained in a contract to which Wilmer Hale is not a party; and (2) that is not triggered. Wilmer Hale's flawed argument aside, its motion to dismiss should be denied.

To prevail on its attempt to invoke the Indemnity Agreement's forum selection clause, Wilmer Hale would have to establish: (1) that it is entitled to rely upon the forum selection clause even though it was not a party to the contract containing the clause; and (2) McAfee's claims fall within that clause. In an attempt to hide its Achilles Heel, Wilmer Hale reverses the order of analysis. McAfee will decline Wilmer Hale's invitation to confuse the issues, and will instead address Wilmer Hale's biggest logical flaw first.

### A. Wilmer Hale is not entitled to enforce the forum selection clause.

There is no dispute that Wilmer Hale is attempting to rely upon a forum selection clause contained in a contract to which it is not a party. (Ex. 1).

For a nonsignatory to enforce a forum selection clause, it must establish a "close relationship" with a signatory to the contract. *Texas Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 237 (S.D.Tex.1997) (citing cases). Such close relationships have been found to exist in the context of third party beneficiaries, related corporations, and officers and directors of corporations. *See, e.g., Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir.1993) (binding corporations owned and controlled by contracting party); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988) (binding parent companies and individual

directors of contracting party); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202-03 (3d Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983) (binding third-party beneficiary). No such "close relationship" exists here, and Wilmer Hale is therefore not entitled to dismissal based upon the forum selection clause.

Wilmer Hale attempts to avoid this necessary conclusion by arguing that it can enforce the forum selection clause because it is a "transaction participant." But as the caselaw upon which Wilmer Hale relies makes clear, this argument is simply frivolous.

Wilmer Hale relies primarily upon *Accelerated Christian Educ'n, Inc. v. Oracle Corp.*, 925 S.W.2d 66, 75 (Tex. App.—Dallas 1996), *abrogated by In re AIU Ins. Co.*, 148 S.W.3d 109, 116, 121 (Tex. 2004) to argue that, as Goyal's attorney, it was a "transaction participant" to the Indemnity Agreement. (Motion at 16). Wilmer Hale's argument is nonsense.

*Accelerated Christian* addressed the limited issue of whether a company's *employee* could rely upon a forum selection clause in a contract between the company and a third party. *Id.* at 75. The employee was the company's regional sales manager responsible for facilitating the agreement containing the forum selection clause between the company and the third party. *Id.* at 69. The court held that he could enforce the clause because he was a "transaction participant" and the claims against him arose out of the contract. *Id.* at 75. What Wilmer Hale conveniently forgets to tell this Court is that the *Accelerated Christian* court went on to provide a definition of "transaction participant" into which Wilmer Hale clearly does not fall:

> By transaction participant, we mean *an employee* of one of the contracting parties *who is individually named* by another contracting party *in a suit arising out of the contract* containing the forum selection clause. To hold otherwise would allow a *nonsignatory employee*, who was a transaction participant, to defeat his company's agreed-to forum by refusing to be bound by the employer's contract.

*Id.* at 75 (emphasis added).

As *Accelerated Christian* makes clear, the term "transaction participant" is limited to employees who actually "participated" in the "transaction" culminating in the contract containing the forum selection clause, and are sued in their individual capacity in a suit *arising out of that contract*. Here, there is no dispute that: (1) Wilmer Hale was not an "employee" of Goyal or McAfee; and (2) Wilmer Hale did not "participate" in the "transaction" culminating in the Indemnity Agreement. Wilmer Hale is also not being sued for any claim "arising out of" the Indemnity Agreement. Wilmer Hale's reliance upon *Accelerated Christian* is therefore woefully misplaced.[2]

Wilmer Hale's reliance upon an unpublished Oregon case and a Georgia case is equally misplaced. In *First Specialty Insurance Corp. v. Admiral Ins. Co.*, 2007 WL 1876516 (D. Or. 2007) (unpublished), the Court enforced a forum selection clause between two insurers because the coverage issue involved in the lawsuit "depend[ed] on whether the additional insured requirement in the subcontract" containing the forum selection clause was void. *Id.* at * 3. The court concluded that the nonsignatories should be bound by the clause because their conduct was "closely related to the contractual relationship." *Id.* No such close relationship exists here.

Wilmer Hale's reliance on *McNair v. Monsanto Co.*, 279 F.Supp.2d 1290 (N.D. Ga. 2003) is similarly puzzling. The court in that case enforced the forum selection clause against one defendant because the claims against it were inextricably intertwined with those alleged against another defendant who was a signatory to the contract containing the forum selection

---

[2] The caselaw Wilmer Hale cites in footnote 10 of its motion as support for its "transaction participant" argument is equally inapplicable. In two of the cases, the court enforced the forum selection clause because the nonsignatories were participants *to the transaction in which the contract containing the forum selection clause was executed. Texas Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 237 (S.D. Tex. 1997); *Brock v. Entre Computer Centers, Inc.*, 740 F.Supp. 428, 430-31 (E. D. Tex. 1990). In another, the clause was enforced because the nonsignatory was alleged to be liable under theories of alter ego and single business enterprise. *Alternate Delivery Sol., Inc. v. R.R. Donnelly & Sons Co.*, 2005 WL 1862631, at *15-16 (W.D. Tex. July 8, 2005). And contrary to Wilmer Hale's assertion, *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962) cannot be read so broadly as to allow an attorney to be bound by a contract its client signed *years before an attorney—client relationship was even developed*. Accordingly, Wilmer Hale's motion should be denied.

clause. *Id*. at 1306. The court then noted that the forum selection clause *would not* have been applied if the signatory to the contract containing the clause had not been named as a defendant:

> **The Court notes that this *is not a case* where [the nonsignatory] is seeking to enforce the forum selection clause and [the signatory], the party to the 1998 Agreement, is not a Defendant in the lawsuit.**

*Id*. at 1307 (emphasis added). Thus, far from supporting Wilmer Hale's position, *McNair* actually supports the opposite—that the forum selection clause *is not applicable* in this case because the signatory to the contract it not a party and the claims against Wilmer Hale are not inextricably intertwined with another defendant in this lawsuit who could enforce the forum selection clause. Wilmer Hale's motion to dismiss should therefore be denied.

Nor is McAfee "equitably estopped" from resisting application of the forum selection clause. McAfee's claims are not at all dependent upon the Indemnity Agreement's subrogation clause—indeed, McAfee's live pleading does not even contain a claim based on equitable subrogation. Even if it did, the fact that McAfee is subrogated to Goyal's rights under the Indemnity Agreement is an issue between McAfee and Goyal, and does not meaningfully implicate Wilmer Hale *at all*. As such, Wilmer Hale's equitable estoppel argument fails.

In sum, Wilmer Hale is not a signatory to the Indemnity Agreement, and was not a participant to the transaction in which the Indemnity Agreement was executed. It therefore cannot rely upon the forum selection clause in that agreement, and its motion to dismiss must therefore be denied.

> **B.      Even if Wilmer Hale could rely upon the forum selection clause, which it cannot, the clause would still not apply because McAfee's claims do not arise out of the Indemnity Agreement.**

Wilmer Hale argues that McAfee's claims against it "arise out of the contractual relationship" because they "depend upon the allegation that Wilmer Hale induced McAfee to

advance expenses to Goyal that were "unreasonable." Even a cursory review of the support upon which Wilmer Hale relies makes clear that Wilmer Hale's argument must be rejected.

First, Wilmer Hale's reliance upon the Northern District of Texas' unpublished opinion in *Aerus LLC v. Pro Team, Inc.*, 2005 WL 1131093, at *7 (N.D. Tex. May 9, 2005) is misplaced. The "relevant language at issue" in *Aerus* was "In the event either Party asserts a breach or default by the other under the terms of this Agreement, the jurisdiction, venue, and applicable law shall be [the] City of San Diego, California." *Id.* at *8. This language is not even remotely similar to that in the Indemnity Agreement at issue here.[3]

More importantly, McAfee's claims do not "arise out of" or "implicate" the Indemnity Agreement. (Motion at 14). McAfee's claims are based entirely upon the fact that Wilmer Hale unleashed 50 lawyers, 10 legal assistants and 49 staff personnel to bill *for five years* in the criminal defense of *one defendant*. (Complaint at ¶¶ 5-10). All of McAfee's claims arise out of these actions—and *none of the claims "arise out of"* or "*implicate*" the Indemnity Agreement. (Complaint at ¶¶ 11-33).

Accordingly, even if Wilmer Hale could rely upon the forum selection clause, which it cannot, it still would not be entitled to dismissal based thereon. Wilmer Hale's motion to dismiss should therefore be denied.

## IV. Goyal is not an indispensible party.

### A. Despite Wilmer Hale's attempts to rely upon clearly inapplicable caselaw, Goyal is clearly not an indispensible party.

Wilmer Hale's contentions that Goyal is somehow necessary to this case are based either on the Indemnity Agreement or on its insistence that McAfee is litigating over the quality of

---

[3] Wilmer Hale also relies upon a number of cases standing for the proposition that contract-related tort claims involving the same facts as a contract claim fall within the forum selection clause. (Motion at 15, n.9). These cases have no application here whatsoever because McAfee has not alleged—and does not have—any contractual claims against Wilmer Hale.

Wilmer Hale's representation and the reasonableness of its fees. Both arguments miss the point and neither is relevant to this Motion because: (1) the Indemnity Agreement has nothing to do with this lawsuit – Wilmer Hale is not a party to that Agreement, and claims arising out of the Agreement will be resolved in Delaware; and (2) Goyal's conviction is the best evidence of the quality of Wilmer Hale's representation, and McAfee's tort claims do not challenge whether particular decisions were wise or whether particular fees were reasonable – they challenge whether Wilmer Hale actually did the work for which McAfee was billed.

Wilmer Hale first argues that Goyal "claims an interest in the subject of this litigation" by alleging that the subject of the litigation is the Indemnity Agreement, and relying on cases holding that a party to an agreement is indispensable to a lawsuit seeking to rescind, annul, or interpret that agreement. Because this case has nothing to do with the Indemnity Agreement, that argument fails. This lawsuit is McAfee's effort to recover fees fraudulently overbilled by Wilmer Hale and to recover damages based on fraudulent billing for legal services never performed. Even if Goyal is necessary to some lawsuit based on the Indemnity Agreement, he is still not a necessary party *to this case*, because *this case is not based on the Indemnity Agreement*. McAfee has sued Wilmer Hale for torts committed in Texas which are in no way dependent on anyone's interpretation of any agreement, and Wilmer Hale cites no authority to suggest otherwise.

Wilmer Hale's reliance on cases requiring dismissal when all clients are not joined in a legal malpractice case, or when all obligees on a contract are not joined in a case litigating the contract is similarly inappropriate because, despite Wilmer Hale's dogged efforts to construe it as such, this is neither a legal malpractice case, nor a contract case. Wilmer Hale's alleged authority is simply inapplicable here. Goyal is not an indispensable party.

Wilmer Hale also tries to make Goyal an indispensable party by arguing that attorney-client privileges and work product privileges may be revealed in this lawsuit between McAfee and Wilmer Hale. Because Wilmer Hale mischaracterizes the claims in this case, it mischaracterizes the focus of discovery. Discovery will not focus on the wisdom of Wilmer Hale's work or the actions they felt were "particularly important." The claims against Wilmer Hale are tort claims alleging that they didn't do the work at all, and discovery will be focused on those issues and not primarily centered on the privileged information Wilmer Hale seems so concerned about keeping secret. Indeed, even when reasonableness of fees is an issue, attorney fee claims are proved up in courts every day without the great drama Wilmer Hale insists will be required here.

Next, the work product privilege is not Goyal's privilege, and if applicable, can be asserted by Wilmer Hale in this case whether or not Goyal is a party. Likewise, any attorney-client privilege can be asserted by Wilmer Hale on Goyal's behalf, whenever that privilege is appropriate and applicable, and confidential information in bills that have not already been sent to McAfee can be protected by a Protective Order. The fact that some privileged information may come to light in this case in no way makes Goyal an indispensable party.

Finally, Wilmer Hale's claim that Goyal is necessary "from their standpoint" because he has knowledge about this case does not make Goyal a necessary party from the standpoint of Federal Rule of Civil Procedure 19. Goyal may have knowledge that makes him a witness, but the Rules can certainly not be stretched to mean that every possible *witness* also becomes an indispensable *party* in that case.

**B.    Because Goyal is not an indispensable party, his joinder is not required.**

Having concluded erroneously that Goyal is an indispensable party, Wilmer Hale once again invokes the inapplicable Indemnity Agreement to conclude that he can not be joined in this case. McAfee does not dispute that claims arising out of the Indemnity Agreement will be litigated in Delaware, and have in fact already begun there. However, as explained above, just as Goyal is not an indispensable party to tort claims between McAfee and Wilmer Hale, the Indemnity Agreement - and its venue clause - have nothing to do with those tort claims and do not mandate that claims for torts committed in Texas by Wilmer Hale be litigated anywhere but Texas.

### C.   Even if Goyal were an indispensable party, this case should still proceed.

Even if Goyal were an indispensable party who cannot be joined in this case, application of the factors in Federal Rule of Civil Procedure 19(b) mandates that this case go forward without Goyal. Although Wilmer Hale summarizes the relevant factors, for obvious reasons they decline to evaluate them, and fail to acknowledge that the prejudice that should be considered by this Court is any prejudice that would result to the absent person – or the existing parties.

Analysis of Federal Rule of Civil Procedure 19(b)(1) shows that Goyal will not be prejudiced if the tort claims between McAfee and Wilmer Hale are litigated without him, but McAfee will be prejudiced if it is forced to delay pursuing its claims, or forced to pursue them in a foreign court. Any judgment entered in this case will adjudicate the tort liability of Wilmer Hale. Goyal's presence is completely unnecessary for this Court to determine whether Wilmer Hale negligently breached a duty owed to McAfee, whether it committed fraud against McAfee, and whether it stole McAfee's money. Goyal will not be prejudiced if he is absent while this court determines those claims.

Moreover, any interest Goyal does have will be protected by both McAfee and Wilmer Hale. On the only real issue in this lawsuit – whether Wilmer Hale owes McAfee money for fees that were fraudulently billed - the interests of Goyal and McAfee are exactly aligned. To the extent McAfee reduces the amount of Wilmer Hale's bills, that results in a reduction of any amounts Goyal may owe to McAfee to reimburse it for Goyal's defense costs. The interests of Goyal and McAfee are exactly the same – they both benefit from recovering fees fraudulently obtained by Wilmer Hale. Likewise, McAfee cannot comprehend how any dispute between Wilmer Hale and McAfee could possibly "threaten [Goyal's] relationship with his lawyers" in the ongoing sentencing phase of the criminal case. (Motion at 19). McAfee would never, and surely Wilmer Hale can not be heard to, argue that Wilmer Hale would somehow turn its back on Goyal in the critical sentencing phase following his conviction, just because Wilmer Hale finds itself in a dispute with Goyal's former employer.

If the court does find any prejudice, Federal Rules of Civil Procedure 19(b)(2) and 19(b)(3) require consideration of ways to lessen that prejudice through the relief in the judgment. The terms of any judgment assessing tort liability against Wilmer Hale in favor of McAfee will not implicate Goyal and pose no prejudice to Goyal. Moreover, McAfee seeks relief only from Wilmer Hale for torts committed by Wilmer Hale, and any judgment addressing those claims is certainly adequate without the inclusion of Goyal.

Finally, McAfee's most appropriate remedy for torts committed against it in Texas is relief from a Texas court. Wilmer Hale's argument that McAfee can just bring these claims in Delaware rings hollow. The current Delaware action arises out of a contract in which McAfee agreed to litigate in Delaware *with Goyal*. The fact that McAfee agreed to a venue clause in a contract with Goyal—and to which Wilmer Hale is not a party—should in no way limit McAfee,

the Plaintiff, from choosing the most appropriate forum for recovering for torts committed against it in Texas by Wilmer Hale. McAfee will be prejudiced if Wilmer Hale is allowed to manipulate clauses in an unrelated contract to deprive Plaintiff of its forum of choice, and deprive a Texas Court of adjudicating tort claims committed in Texas. Wilmer Hale's motion to dismiss should therefore be denied.

## V.    McAfee's claims satisfy the applicable federal pleading standard.

Wilmer Hale's final attempt at dismissal is to argue that McAfee's claims are not sufficiently pled to meet the federal pleading standard. Interestingly, Wilmer Hale does not—and cannot—argue that it has insufficient notice to respond to McAfee's allegations. Instead, it seeks dismissal based upon its own hyper-technical view of the pleading standard. When the correct standard is applied, it is clear that McAfee has sufficiently pled its claims.

### A.    McAfee's fraud claim satisfies the Rule 9(b) pleading standard.

Wilmer Hale claims it is entitled to dismissal of McAfee's fraud claims because the claims fail to meet the minimum standard of pleading sufficiency under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Wilmer Hale is incorrect.

Rule 9(b) requires that a party alleging fraud must "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

The Fifth Circuit has interpreted Rule 9(b) to require the plaintiff to set forth the "who, what, when, where, and how" of the alleged fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). The allegations in McAfee's Third Amended Complaint easily meet this standard.

McAfee clearly provides the "who, what, when, where and how" of its fraud claims sufficient to begin the discovery process. The fraudulent bills sent by Wilmer Hale monthly from February 2003 to November 2007, contained material misrepresentations alleging that over 100 timekeepers actually billed approximately $12 million dollars in fees and justifiable expenses to defend Goyal's case. (Complaint at ¶¶ 6-7.) Those fraudulent bills were sent by Wilmer Hale to McAfee for payment. (Complaint at ¶ 12). Wilmer Hale intended for McAfee to rely on the representations that the work described in the bills had actually been performed, and was necessary to "ensure Goyal's freedom." (Complaint at ¶¶ 7, 19). McAfee did in fact rely on those misrepresentations and paid the fraudulent bills, believing that all of the billed fees had actually been incurred to defend the claims against Goyal. (Complaint at ¶ 21).

Although Wilmer Hale attempts to impose more rigorous pleading requirements than those set out in Federal Rule of Civil Procedure 9(b), McAfee should certainly be entitled to conduct normal discovery under the rules before its claim is summarily dismissed at this initial juncture. Given the plethora of motions filed in the brief history of this case, Wilmer Hale will certainly seek summary judgment if McAfee is not able to present evidence of fraud after the conclusion of the necessary discovery. But the time to seek dismissal of the fraud claims is after adequate discovery has been completed. It would be improper and unfair to dismiss McAfee's claims at this early stage. Wilmer Hale's motion to dismiss should therefore be denied.

**B.**   **McAfee's remaining claims are not subject to dismissal under Rule 12(b)(6).**

       **1.**   **The Fifth Circuit disfavors rule 12(b)(6) motions, which are "rarely granted."**

Wilmer Hale moves for dismissal of McAfee's negligence, gross negligence, breach of fiduciary duty and assumpsit claims under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), claiming McAfee has failed to state any claim upon which relief could be granted.

As the Fifth Circuit has repeatedly explained, a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *see also Lowrey v. Texas A&M University Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Lowrey*, 117 F.3d at 247. The determining issue at this early stage is not whether the plaintiff will ultimately prevail, but whether it should be entitled to offer evidence in support of its claim. *Jones v. Greninger*, 188 F.3d 322, 325 ( 5th Cir. 1999).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). Instead, the complaint need only comply with Federal Rule of Civil Procedure 8 ("Rule 8") by providing a *short and plain* statement of the claim, including factual allegations that when assumed to be true raise a right to relief above the speculative level. *Id.*; *see also* FED. R. CIV. P. 8(a). McAfee's complaint easily meets this standard.

### 2. No attorney-client relationship is required to bring negligence-based claims.

Wilmer Hale argues that McAfee's claims of negligence, gross-negligence, and breach of fiduciary duty must all be dismissed because there is no attorney-client relationship between McAfee and Wilmer-Hale. Again, despite Wilmer Hale's continued representations to the Court, *McAfee is not suing Wilmer-Hale for legal malpractice*. Rather, as explained throughout this Motion, McAfee is suing Wilmer Hale for torts committed by Wilmer Hale against McAfee – and no attorney-client relationship is required to maintain those claims.

In fact, in the *McCamish* case relied on by Wilmer Hale, the Texas Supreme Court expressly rejected Defendant's argument that the privity rule required in a legal malpractice case applied to all negligence-based causes of action, and expressly allowed a cause of action for negligent misrepresentation against an attorney by a non-client – regardless of privity – because liability under that claim "is not based on the breach of duty a professional owes his or her clients or others in privity, but on an independent duty to the nonclient," recognizing that "an attorney can be subject to a negligent misrepresentation claim in a case where she is not subject to a legal malpractice case."[4]

Wilmer Hale owed McAfee an independent duty to use ordinary care in reviewing, editing, and entering time charged for its legal services, and monitoring the actions of time-keepers to ensure that all time billed to the case was actually worked on the case.  The breach of this duty, and the intentional and knowing failure to honor that duty, makes Wilmer Hale liable for negligence and gross negligence.  No attorney client relationship is required to bring those claims, and Wilmer Hale's motion to dismiss those claims should be denied.

### 3. An attorney-client relationship is not required to establish a fiduciary duty.

Wilmer Hale also relies on the fact that there is no attorney-client relationship between McAfee and Wilmer Hale to allege that Wilmer Hale can never owe any fiduciary duty to McAfee.  Again, Wilmer Hale misses the point.  In fact, the case it relies on to make the point actually rejected the argument that an attorney-client relationship was required, refusing to dismiss claims for fraud, conspiracy, breach of contract, and breach of warranty because those

---

[4] *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1998).  The other three cases cited by Wilmer Hale for this proposition all either expressly recognize a negligence-based cause of action by a non-client against an attorney, or are distinguished by other cases that do.

claims were not based on an attorney-client relationship, and the court would not presume that they were. [5]

Texas law is clear that, in addition to the traditional, formal relationships that give rise to a fiduciary duty (like an attorney-client relationship) "informal fiduciary relationships or confidential relationships may arise where one person in trust relies upon another or where influence has been acquired and abused or confidence has been reposed or betrayed." [6] In this case, McAfee clearly trusted the fine and upstanding law firm of Wilmer Hale when it claimed that the enormous amount of work and fees were necessary to preserve the liberty of its employee. Wilmer Hale abused that influence and betrayed that confidence. McAfee is entitled to bring, and has properly pled, a cause of action for breach of fiduciary duty.

### 4. McAfee's assumpsit claim should not be dismissed at this early stage.

Interestingly, Wilmer Hale does not complain that McAfee's assumpsit claim is defectively pled. Instead, it half-heartedly argues that McAfee's assumpsit claim should be dismissed because it is the subject of a contract, then puts all of its efforts into making a summary-judgment type argument for dismissal based upon an affirmative defense. (Motion at 24-28). Once again, Wilmer Hale ignores the applicable standard governing its motion—a standard that is fatal to its arguments.

### i. McAfee's assumpsit claim is not the subject of a contract.

Wilmer Hale seeks dismissal of McAfee's assumpsit claim under Rule 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the Court's inquiry is limited to the contents of the pleadings, and all material allegations in Plaintiff's Complaint must be taken as true and construed in the light most favorable to Plaintiff. *Jackson v. Procunier*, 789 F.2d 307,

---

[5] *See Safeway Managing Agency, Inc. v. Clark & Gamble*, 985 S.W. 2d 166, 168 (Tex. App.—San Antonio 1998, no pet.).
[6] *Querner v. Rindfuss*, 966 S.W.2d 661, 667 (Tex. App.—San Antonio 1998, pet. denied).

309 n. 4 (5th Cir.1986); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

Here, McAfee's complaint is completely devoid of any reference to a contract covering the same subject matter of its assumpsit claim. The 12(b)(6) inquiry must end here, and for this reason alone Wilmer Hale's motion to dismiss must be denied.

Of course, there is good reason McAfee's complaint does not refer to a contract covering the same subject matter of its assumpsit claim—*as Wilmer Hale repeatedly admits, no such contract exists.* (Motion at 23, 26). And because no such contract exists, McAfee is entitled to pursue a claim for assumpsit. *See, e.g., Staats v.Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951); *Friberg-Cooper Water Supp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.--Fort Worth 2006) *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007).

Wilmer Hale's attempt to avoid this inevitable conclusion by relying upon yet another unpublished case with no precedential value is misplaced. (Motion at 26). Wilmer Hale relies upon *McIntosh v. Wiley*, 2006 WL 3691109 (S.D. Tex. 2006) (unpublished). But as even Wilmer Hale admits, *Wiley* was decided *at the summary judgment stage. Id.* at *5. (Motion at 26). Moreover, a reading of *McIntosh* and the cases it relies upon plainly shows that it applies only where an express contract exists that "governed the very subject matter giving rise to [the plaintiff's] equity claims against" the defendant. *Id.*; *see also W & W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex.App.-Tyler 1990, no writ); *see also Iron Mt. Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.,* 42 S.W.3d 149, 160 (Tex.App.-Amarillo 2000, no writ).

For example, the plaintiffs in *McIntosh* sought damages from two defendants based upon the purchase of sheep that were less valuable than claimed. *McIntosh*, 2006 WL 3691109, at * 1.

Plaintiffs had a contract with one defendant and did not have a contract with the other—but the subject matter of the lawsuit as to each defendant was identical—which is the sole reason why the court did not analyze the quasi-contractual claims. *Id*. at * 6. Likewise, *Capps* involved claims where the quasi-contractual claim was based upon the identical subject matter as the contract claim. *Capps*, 784 S.W.2d at 537-38. And *Easley* actually *hinders* Wilmer Hale's argument—it concluded that the trial court erred in refusing to submit alternative jury instructions regarding recovery under contract and quasi-contract. *Easley*, 42 S.W.3d at 160-61.

In sum, *McIntosh* would be applicable if McAfee had sued *Goyal* for breach of an express contract to provide *legal services* to *McAfee*, and also sued Wilmer Hale for assumpsit based upon Wilmer Hale's providing *identical services*. That is obviously not the case, and as with all the cases upon which Wilmer Hale has relied in its motion to dismiss, *McIntosh* is completely inapplicable. Wilmer Hale's motion to dismiss should therefore be denied.

> ii. **Wilmer Hale is not entitled to dismissal based upon the affirmative defense of voluntary payment.**

Wilmer Hale's final attempt at avoiding responsibility for its actions is to argue for 12(b)(6) dismissal based upon the affirmative defense of voluntary payment. Once again, Wilmer Hale's argument fails miserably.

Dismissal at the early 12(b)(6) stage based upon an affirmative defense can only occur where the affirmative defense is obvious from the face of the plaintiff's complaint. *EPCO Carbon Dioxide Products, Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006). Thus, for Wilmer Hale to be entitled to dismissal based upon the affirmative defense of voluntary payment, it would have to be clear from the face of McAfee's complaint that McAfee *voluntarily* made payments to Wilmer Hale "*with full knowledge of all the facts and without fraud or deception.*" *BMG Direct Marketing, Inc. v. Peake*, 178 S.W.3d 763, 769 (Tex. 2005).

As the Texas Supreme Court has explained, the voluntary payment rule does not apply where the Plaintiff did not have "full knowledge of all the facts." *Id*. at 772.

Here, the face of McAfee's complaint does not establish that McAfee voluntarily made payments to Wilmer Hale "with full knowledge of the facts and without fraud or deception." On the contrary, McAfee has alleged that Wilmer Hale fraudulently engaged in a scheme to defraud it out of millions of dollars based upon a billing scheme that was unjustifiable. (Complaint at ¶¶ 5-10; 17-21). Accordingly, it is "obvious" from the face of McAfee's complaint that Wilmer Hale's voluntary payment affirmative defense *does not* apply. Wilmer Hale's motion to dismiss must therefore be denied.

## <u>CONCLUSION</u>

For the reasons explained herein, McAfee respectfully requests that this Court deny Wilmer Hale's motion to dismiss, and for such other relief to which it is justly and equitably entitled.

Respectfully submitted,

*/s/ Martin E. Rose*
Martin E. Rose
Texas State Bar No. 17253100
**Attorney-In-Charge**

Lynda Lee Weaver
State Bar No. 21010680
Kevin A. Koudelka
State Bar No. 24025971
Of Counsel

**ROSE•WALKER, L.L.P.**
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
(214) 752-8600 phone
(214) 752-8700 fax
mrose@rosewalker.com
llweaver@rosewalker.com
kkoudelka@rosewalker.com

and

Joe Kendall
State Bar No. 11260700
**PROVOST UMPHREY LLP**
3232 McKinney Ave., Ste. 700
Dallas, TX 75204
Telephone: (214) 744-3000
Fax: (214) 744-3015
jkendall@provostumphrey.com

**ATTORNEYS FOR PLAINTIFF
MCAFEE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record are were served via the Court's ECF System on this the __ day of July, 2008:

Paul Yetter
YETTER & WARDEN
Two Houston Center
909 Fannin, Suite 3600
Houston, TX   77010
Phone:  713.632.8000
Fax:  713-632-8002
pyetter@yetterwarden.com

*/s/ Martin E. Rose*
Martin E. Rose