UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MCAFEE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:08-CV-160 |
| | § | |
| WILMER CUTLER PICKERING | § | |
| HALE AND DORR LLP, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT WILMER CUTLER PICKERING HALE AND DORR LLP'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

McAfee shouts that WilmerHale's Motion to Dismiss is "warped" and "garbage," Response ("Resp.") at 1-2, but when it comes time to demonstrate that this case is ripe, that it belongs here, that it can proceed without Prabhat Goyal, and that it pleads a fraud claim, McAfee's Response offers labels, not legal authority.

McAfee insists that its lawsuit is ripe because, while a challenge to "reasonableness" in Delaware is a "recoupment claim" that should be deferred until after the criminal case is concluded, in ***this*** Court, "there is little doubt the fees were unreasonable," and so, the Court should hear this case of "tortious overbilling" by WilmerHale. Resp. at 5, 9. The labeling cannot obscure the fact that in both forums, what is at issue is the same money, paid because of the same Indemnity Agreement, and, as McAfee concedes, if Mr. Goyal's conviction is affirmed, then McAfee will recover "all" of its advances from its indemnitee; if his conviction is reversed, then it claims no right to challenge reasonableness at all. *Id.* Either way, the claim here is not ripe, and it makes no sense for the Court to assess the reasonableness of WilmerHale's fees (or, in McAfee-speak, the "tortious overbilling") when McAfee has already urged the Delaware court

to defer that issue until after Mr. Goyal's representation is concluded. McAfee urges this Court to proceed without Mr. Goyal because his interests are "exactly aligned" with McAfee's, and this action will "benefit" him, *id.* at 10, 19, ignoring that Mr. Goyal sued McAfee in Chancery Court asking that any challenge to reasonableness proceed there, in his presence, rather than here, in his absence.

At the end of the day, McAfee's only argument as to why this case is ripe, and why it should proceed here, and without Mr. Goyal, is that McAfee was "defrauded." *Id.* at 6, 8, 14, 17. But after four attempts, McAfee cannot come close to meeting the standards for pleading fraud. Rule 9(b) requires more than hope that McAfee will find a fraud "in discovery," and assertions in a brief ("they didn't do the work at all," *id.* at 17) that McAfee is not willing to allege in its complaint do not suffice. The assurance that all of this can be addressed at summary judgment ignores that under controlling precedent a complaint alleging fraud must identify, *inter alia*, each allegedly misleading statement, the contents of the false representation, and the reason or reasons why the statement is fraudulent. *See U.S. ex rel. Siemens Bldg. Techs., Inc. v. Grot, Inc.*, 2005 WL 2012263, at *1 (E.D. Tex. 2005). The gravamen of this lawsuit is and always has been that WilmerHale assigned too many lawyers to this case and billed too much, but those claims rest on information supplied, not withheld, by WilmerHale's invoices. The fraud charges have been exposed for what they always were—a particularly irresponsible way for McAfee to seek to limit its undertaking to its former officer. Four tries is plenty. This lawsuit should be dismissed now.

## Argument

### A. McAfee's Case Is Not Ripe.

McAfee has explained both in Delaware and in this Court why this case is not ripe. In the Delaware court, McAfee stated "[Mr. Goyal] could lose his appeal, in which case he has to pay all those fees back, and it doesn't matter if they are reasonable or unreasonable." Exh. 5, at

6. In this Court, McAfee has twice stated that if Mr. Goyal wins his appeal there can be no reasonableness challenge. Resp. at 9 ("whether Goyal's expenses are reasonable only arises if Goyal's defense is *unsuccessful*") (orig. emph.); Plaintiff's Supp. Resp. to Defendant's Motion to Dismiss (July 7, 2008) (Dkt. #32) at 4 (containing identical admission). If, as McAfee has admitted, all of its payments to WilmerHale were provisional, why should this Court hear a challenge now to the fees paid to WilmerHale, in the middle of its work for Mr. Goyal?

The Delaware court has answered that question for itself, and the answer is that the challenge to reasonableness of fees paid should not proceed.[1] If a challenge to the number of timekeepers and total bill is premature in Delaware, it is not ripe in Texas, particularly where McAfee has publicly stated that it expects to recover **all** of the fees from Goyal if his conviction is affirmed.

McAfee's reliance on *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601 (N.D. Tex. 2006), is misplaced. The plaintiff in *Kennard* had suffered actual damages at the time the suit was brought, and there was no possibility that those damages would be obviated by a future event. *Kennard* involved a doctor who purchased a defined benefit plan for his employees based on a promise from the sellers of the plan that it would provide certain tax benefits and

---

[1] McAfee writes that the Delaware court concluded that, while reasonableness should not be addressed until the criminal case is concluded, "those claims are not at issue in Texas," Resp. at 8, but that was because **McAfee told the court in Wilmington that the case in Texas had nothing to do with reasonableness and only with fraud**. The Chancery Court asked McAfee whether in fact the suit in Texas was an "interesting way" of attacking "advancement . . . outside the realm of a debate between the former officer and director" (which is, by contract, committed to the jurisdiction of the Delaware court), which would pose "special risks" to lawyers who are defending cases "funded by advancement under our statute." Exh. 5 at 14. To alleviate the Chancery Court's concern, McAfee assured the Chancery Court that this action in Texas is not a challenge to reasonableness: "this is an extraordinary circumstance where there was actual[] fraud by the law firm"; it's "not [an allegation] that the law firm, you know, should have billed $8 million and they billed $12 million," *id.* at 14-15. As a result, the Chancery Court was understandably misled to believe that what is before this Court is "simply a fraud claim, which is separate and apart," and "it's one thing to pay an unreasonable amount [and] another thing to be a victim of fraud." Tr. 18. In fact, the case here is nothing but a reasonableness challenge, coupled with fraud and theft-by-fraud claims that are insufficient on their face.

deductions. *Id*. at 604. The IRS determined that defined benefit plans of that type did not qualify for the promised tax benefits, and initiated an audit of the doctor, which was ongoing at the time the litigation was initiated. *Id.* at 604, 606. The sellers of the plan argued that the doctor's claims were not ripe because the audit was still ongoing and the IRS had not yet finally ruled on the validity of the plan. *Id.* at 606. The court disagreed because "the fact that the IRS ha[d] yet to rule on the [plan's] validity for tax deduction purposes [wa]s irrelevant" because the doctor had "already suffered damages and continues to incur expenses, most notably while defending his audit," and "and the fact that the other damages from the IRS audit remain contingent . . . do[es] not make th[e] dispute premature or speculative." *Id.* at 606-07. In other words, the audit determination only went to the *amount* of damages suffered by the doctor, not whether he would suffer *any* damages at all; thus, his claim was ripe. Here, McAfee has admitted that its entire claim for damages could disappear if Mr. Goyal were convicted, as he would be contractually obligated to return all of the advances for fees—whether or not they are "fraudulent" or "tortiously billed." *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (case is not ripe if injury is speculative and may never occur).[2]

Finally, McAfee's contention that neither WilmerHale nor Mr. Goyal would be prejudiced "if this case goes forward" now (Resp. at 10) assumes that WilmerHale will have no opportunity to describe what it did for Mr. Goyal and why the work was required—matters that implicate Mr. Goyal's privilege, in the middle of his defense, where production would void the privilege. Resp. at 17. McAfee apparently believes that no defense can be offered, as McAfee

---

[2] In addition, the notion that the reasonableness challenge that McAfee admitted was not ripe could be skipped over because "there is little doubt that the fees were unreasonable," Resp. at 9, is unadorned by citation to legal authority. Suffice it to say that, given that the other reported fees for representation of officers charged in accounting cases were much larger than those charged by WilmerHale (*see* Motion to Dismiss at n.3), the firm expects to defend this case vigorously when and if it becomes ripe.

-4-

will demonstrate that "they didn't do the work at all." *Id.* But after four tries, McAfee has failed to identify a single time entry that it can allege was fraudulent. This case would call upon WilmerHale to explain why it did what it did, raising exactly the privilege issues that should be avoided where, as here, the claims may never need to be heard. McAfee has no good reason to impose this burden on WilmerHale or the Court now.

### B. The Forum Selection Clause Should Be Enforced.

McAfee now disputes the applicability of a contract between it and "the convicted felon," Resp. at 4, but McAfee's contract with its CFO did not terminate with the guilty verdict. As McAfee has repeatedly admitted, it paid the money in question to WilmerHale because of the Indemnity Agreement, and a challenge to those payments implicates the Agreement. The idea that WilmerHale cannot now call attention to the forum selection clause because nobody could have "contemplated" that counsel would be hired when the Agreement was signed, Resp. at 5, makes no sense. How would Mr. Goyal realize the benefit of the protections promised by McAfee unless he hired a lawyer to defend charges arising out of his work for McAfee? McAfee may have tried to remove all references to the Agreement in its most recent complaint, but this Court can and should enforce the forum selection clause.

#### 1. Transaction Participant

WilmerHale may enforce the forum selection clause as a "transaction participant." A law firm whose fees are to be advanced under the Agreement is precisely the type of entity whose role in an indemnification transaction was contemplated at the time the transaction was entered. McAfee's Response does not account for the full range of parties that may qualify as a transaction participant under federal law.[3] In *Costal Steel Corp. v. Tilghman Wheelabrator, Ltd.*,

---

[3] McAfee asserts that the concept of a transaction participant is limited to an "employee." Although that was the fact pattern in *Accelerated Christian Educ'n, Inc. v. Oracle Corp.*, 925 S.W.2d 66, 75 (Tex. App.-

for example, the court made clear that where the non-signatory was a beneficiary of the contract, and because the plaintiff's claims "ultimately depend[ed] on the existence of a contractual relationship between" the signatories to the contract, enforcement of the forum clause as a defense against the non-signatory plaintiff was appropriate. 709 F.2d 190, 202-03 (3d Cir. 1983), *cert. denied*, 464 U.S. 938 (1983); *see also Environmental Tectonics Corp. v. Royal Thai Air Force*, 1994 WL 82002, at *5 (E.D. Pa. 1994) (bank issuing letter of credit on a transaction was a foreseeable party to litigation and so qualified as a "transaction participant."). McAfee seeks to distinguish *First Specialty Ins. Corp. v. Admiral Ins. Co.*, 2007 WL 1876516, at *3 (D. Or. 2007), on grounds that WilmerHale and Mr. Goyal have no "close relationship," but the attorney-client relationship is fiduciary in nature. *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). As a foreseeable participant in the indemnification and advancement obligations created by the Agreement—indeed, recommended to Mr. Goyal by McAfee—WilmerHale is entitled to enforce the Agreement's forum selection clause.

### 2. Equitable Estoppel

Equitable estoppel does not require that McAfee's claims "directly depend" on the Agreement—it is sufficient that the claims be intertwined with the Agreement. *See Alternative Delivery Solutions, Inc. v. R.R. Donnelly & Sons Co.*, 2005 WL 1862631, at *15-16 (W.D. Tex. 2005). The Indemnity Agreement *expressly* invokes the concept of reasonableness in conditioning McAfee's obligation to pay attorneys' fees for its officers and directors, and it is the concept of "reasonableness" as imbedded in that Agreement (an Agreement subject to

---

-Dallas 1996), there is no indication that *Accelerated Christian* intended to restrict the "transaction participant" concept exclusively to the employer-employee context, particularly since that court favorably cited *Lu v. Dryclean-USA of Cal., Inc.*, 11 Cal. App. 4th 1490 (Cal. App. 1992), a case that did not involve the employer/employee context. *Accelerated Christian*, 925 S.W.2d at 75. Whether a forum selection clause is enforceable is a matter of federal law. *See Macphail v. Oceaneering Int'l Inc.*, 170 F. Supp. 2d 718, 721 (S.D. Tex. 2001) (citing *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997)).

interpretation under Delaware law) that will necessarily inform any discussion of what fees McAfee is obligated to pay on behalf of Mr. Goyal. Equitable estoppel applies here as well.

C.  **Mr. Goyal Is An Indispensable Party.**

Like any plaintiff, McAfee can physically expunge all references to any document from its pleading, but McAfee cannot deny that its Indemnity Agreement with Mr. Goyal is the reason why any monies were ever paid to WilmerHale, that Mr. Goyal and not McAfee is WilmerHale's client, and that this lawsuit implicates McAfee's and WilmerHale's obligations to Mr. Goyal, who is not here.

McAfee has brought claims that directly threaten WilmerHale's attorney-client relationship with Mr. Goyal, and his attorney-client privilege. An attack on WilmerHale's fees would call upon the law firm to disclose what work it did and why that work was necessary, and in fact to produce that privileged information to a plaintiff who is cooperating with the Government in an ongoing criminal case. McAfee assures this Court that "the claims against WilmerHale are tort claims alleging that they didn't do the work at all," Resp. at 17, but McAfee has yet to plead such an allegation in any of its four complaints. The notion that this threat to Mr. Goyal can be handled through a protective order is a fundamental misstatement of law.[4]

Finally, the notion that Mr. Goyal need not worry about any of this because McAfee is acting in his interests by bringing this lawsuit, Resp. at 19, must come as news to Mr. Goyal. He hired an attorney to sue McAfee, to ensure that issues of reasonableness are heard in Delaware,

---

[4] Privileged communications revealed to any third parties cease to be privileged as to all third parties. *See In re Syncor ERISA Litigation*, 229 F.R.D. 636, 645 (C.D. Cal. 2005) (citing *United States v. Planche*, 913 F.2d 1375, 1379 (9th Cir. 1990)). The vast majority of courts to consider the question—including in the Ninth Circuit where Mr. Goyal is litigating against the Government—have found that there is no "selective waiver" of the privilege without compromising the privilege as to all. *See id.* at 646; *SEC v. Brady*, 238 F.R.D. 429, 440 (N.D. Tex. 2006). A protective order may protect trade secrets, but its ability to protect the privilege is widely rejected.

where he is a party, along with McAfee. That is where any challenge to WilmerHale's fees should be heard, not here, where Mr. Goyal cannot be made a party.

      **D.     McAfee Still Cannot Satisfy Rule 9(b).**

Having three times failed to plead its alleged fraud (and theft-by-fraud) with sufficient particularity, McAfee was given a fourth opportunity by this Court. It failed again.

McAfee has still not identified a single fraudulent statement, or provided WilmerHale with any fair notice of what is false or fraudulent about its billings. *See Tuchman v. DSC Communications Corp.*, 818 F. Supp. 971, 977 (N.D. Tex. 1993) ("The purposes of Rule 9(b) are: 1) to ensure that the plaintiff has investigated and reasonably believes a fraud has occurred; 2) to provide adequate notice to defendants so that they can respond to the plaintiff's claims; and 3) to protect the reputation of defendants"). The idea that "discovery" will unearth the fraud, and failing that, defendant's recourse is a motion for summary judgment, ignores that Rule 9(b) exists to ensure that defendants should not be subject to this type of claim unless plaintiff can specify the fraud in the pleading stage. *Id.* ("purpose of Rule 9(b) is to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs"); *Thompson Advisory Group, Inc. v. First Horizon Nat. Corp.*, 2007 WL 2284352, at *n. 2 (N.D. Tex. 2007) ("As the Fifth Circuit has noted, the purpose of the heightened pleading standard of Rule 9(b) is to provide defendants with fair notice of the plaintiffs' claims, protect defendants from harm to their reputation and goodwill . . . and prevent plaintiffs from filing baseless claims in an attempt to discover unknown wrongs.").

Four chances are more than enough. McAfee's fraud claims cannot survive the application of Rule 9 (b). The fraud and theft by deception claims should be dismissed.

### E. The Negligence/Fiduciary Duty Claims Are Not Supported by A Duty.

In response to WilmerHale's argument and case authority demonstrating that McAfee's claims for negligence, gross negligence, and breach of fiduciary duty must fail because WilmerHale owed no legal duty to McAfee, McAfee responds that "*McAfee is not suing Wilmer-Hale for malpractice.*" Resp. at 22 (orig. emph.). That is true and irrelevant. For McAfee to maintain a cause of action under one of these theories, WilmerHale has to owe McAfee a legal duty. McAfee cites no cases that support its view that claims for negligence, gross negligence, or breach of fiduciary duty can be maintained by a non-client against a lawyer, and does nothing to address the numerous cases that WilmerHale cites to the contrary.[5]

### F. The Assumpsit Claim Is Deficient.

McAfee cannot dispute the legal principle that if a contract covers the subject matter of its case against WilmerHale, then its assumpsit claims are barred. McAfee's strategy of deleting references to the Indemnity Agreement from its pleading does not erase the Agreement's existence or McAfee's prior acknowledgment in this Court that the monies at issue in this lawsuit were all paid because of the Agreement. *See, e.g.,* Dkt. #1 (First Am. Pet.) ¶ 7 ("Plaintiff paid over $12 million for legal services and expenses on behalf of Goyal under an indemnification agreement"). *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record."); *Stevens v. East Alabama Health Care Auth.*, 2005 WL 3288735, at *1 (M.D. Ala. 2005) (court could take notice of pleadings and materials from prior action). The fact that

---

[5] The one case on which McAfee does rely, *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1998), did not involve the causes of action in McAfee's Third Amended Complaint (negligence, gross negligence, or breach of fiduciary duty).

WilmerHale is not itself a party to the contract that created these payment obligations does not alter its right to point out that there is no room for a "quasi-contract" claim in this case.[6]

Nor does McAfee's strategy of deleting all reference to the Agreement alter the fundamental rule that when there is an adequate remedy at law—such as McAfee would have through the vehicle of a subrogation claim vis-à-vis WilmerHale at the appropriate time—a plaintiff may not maintain an action for quasi-contract at all. Mot. to Dismiss at 26. Here again, McAfee has already contended in earlier pleadings that subrogation would provide it with a remedy (once the conditions for subrogation are met). Dkt. #1 ¶¶ 9-12 (invoking right of subrogation).

The voluntary payment doctrine is an independent basis for dismissal of the assumpsit claim, and is appropriately considered here given McAfee's acknowledgement to this Court that it received and reviewed WilmerHale's bills prior to payment. Dkt. #32 at 10. Apparently recognizing this problem with its assumpsit claim, McAfee does not argue that its assumpsit claim is based on unreasonableness. Instead, it argues that its assumpsit claim should be allowed to proceed because WilmerHale supposedly acted with "fraud or deception" in submitting its bills. Resp. at 27. To the extent that McAfee's assumpsit claim is predicated on allegations of fraud, it is properly dismissed for failure to satisfy the pleading requirements of Rule 9(b).

---

[6] McAfee's effort to distinguish *McIntosh v. Wiley*, 2006 WL 3691109 (S.D. Tex. 2006), is inscrutable. In that case, the court granted summary judgment on an assumpsit claim against a non-signatory when the contract covered the subject matter of the case. Why it matters that there was another defendant (and, here, Mr. Goyal *should* be a party) is left unexplained. *See W&W Oil Co. v. Capps*, 784 S.W.2d 536, 537 (Tex. App.--Tyler 1990, no writ) (a non-signatory may not recover in quantum meruit against another if there is a contract that covers the dispute). *Iron Mountain Bison Ranch v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 156, 160-61 (Tex. App.--Amarillo 2000, no pet.), is inapposite. In that case, both contract and quantum meruit claims were submitted to the jury only because there was a dispute as to the *existence* of an express contract.

## Conclusion

For the foregoing reasons, as well as those stated in the Motion to Dismiss, Defendant WilmerHale respectfully requests that this Court dismiss this action, pursuant to Fed. R. Civ. P. 12(b) (1), (3), (6), (7), and 9(b).

Dated: July 23, 2008                                                  Respectfully submitted,

Of Counsel:

                                                                                            /s/ R. Paul Yetter _____

Shawn M. Bates                                                                   R. Paul Yetter
State Bar No. 24027287                                                    State Bar No. 22154700
Yetter, Warden & Coleman, L.L.P.                                Yetter, Warden & Coleman, L.L.P.
909 Fannin, Suite 3600                                                      909 Fannin, Suite 3600
Houston, Texas 77010                                                       Houston, Texas 77010
(713) 732-8000                                                                     (713) 732-8000
(713) 632-8002 (Fax)                                                          (713) 632-8002 (Fax)

Gerson A. Zweifach                                                           Attorney-in-Charge for Defendant Wilmer
Williams & Connolly LLP                                                 Cutler Pickering Hale and Dorr LLP
725 Twelfth St., N.W.
Washington, D.C. 20005
202-434-5534
202-434-5029 (Fax)

## Certificate of Service

I certify on this 23rd day of July, 2008, a true copy of this motion was filed and served electronically on all counsel of record by e-filing, facsimile, hand delivery, and/or certified mail, return receipt requested.

                                                                                             /s/ Shawn M. Bates_____
                                                                                             Shawn M. Bates